## Commonwealth *vs.* Kerry Van Bell.

Worcester. September 8, 2009. - December 4, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Rape. Attempt. Prostitution. Statute,* Construction. *Practice, Criminal,* Question by jury, Assistance of counsel.

At the trial of an indictment charging attempted rape of a child in violation of G. L. c. 274, § 6, the evidence presented by the Commonwealth, although sufficient to show that the defendant intended and prepared for the rape of a child, was not sufficient to show that he undertook an overt act that put him so near — in time or ability — to the completion of the crime as to be guilty of attempt. [411-417] Cordy, J., dissenting, with whom Ireland, J., joined. Gants, J., dissenting, with whom Ireland, J., joined.

At the trial of an indictment charging the defendant with offering to engage in sexual conduct for a fee (solicitation), in violation of G. L. c. 272, § 53A, the evidence that the defendant had agreed to pay a third party in order to engage in sexual conduct with a child was sufficient to warrant conviction under the statute [417-419]; further, there was no merit to the defendant's contention that G. L. c. 272, § 53A, was void for vagueness, given that the statute sufficiently informed the defendant that agreeing to pay money in order to have sexual intercourse with a child was prohibited [419].

At a criminal trial, the judge's response to a question by the jury, which included a supplemental instruction that appropriately responded to the jury's question, did not constitute an abuse of discretion. [420]

A criminal defendant failed to demonstrate that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's line of questioning of the defendant or to the prosecutor's argument regarding the defendant's credibility, where the cross-examination was fair, the argument was fairly grounded in the evidence, and the decisions not to object did not appear unreasonable at the time they were made [421-422]; further, defense counsel's decision not to move for a required finding of not guilty on an indictment charging solicitation did not, in the circumstances, constitute ineffective assistance of counsel [422-423].

Indictments found and returned in the Superior Court Department on June 11, 2007.

The cases were tried before *Bruce R. Henry*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Brandon L. Campbell* for the defendant.

*Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

*William W. Adams*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

SPINA, J. The defendant was convicted by a jury of offering to engage in sexual conduct for a fee (solicitation), G. L. c. 272, § 53A, and attempted rape of a child, G. L. c. 274, § 6.[1,2] The defendant appealed from his convictions, and we granted his application for direct appellate review. The defendant now contends that (1) his conviction of attempted rape of a child should be reversed because the Commonwealth presented insufficient evidence to prove that he committed an overt act establishing criminal liability for attempt; (2) his conviction of solicitation should be reversed because the statute does not criminalize third-party solicitations and is void for vagueness; (3) his conviction of solicitation was duplicative of his conviction of attempted rape of a child; (4) the judge erred in instructing the jury that a nod may constitute an affirmative response; and (5) his trial counsel was constitutionally ineffective. For the reasons that follow, we reverse the defendant's conviction of attempted rape of a child and affirm his conviction of solicitation.[3]

1. *Background.* We recite the facts that the jury could have found, reserving the development of other facts to the discussion of specific issues.

On March 25, 2004, the vice squad of the Worcester police department conducted an investigation and "sting operation"

---

[1] General Laws c. 274, § 6, provides in relevant part: "Whoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished . . . ."

[2] In August, 2004, after he first was indicted, the defendant moved to dismiss the indictments. A judge in the Superior Court denied the motion to dismiss and reported questions of law to the Appeals Court, pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). The Appeals Court affirmed the denial of the defendant's motion to dismiss. *Commonwealth* v. *Bell*, 67 Mass. App. Ct. 266 (2006). This court denied the defendant's application for further appellate review. 451 Mass. 1101 (2008). The Commonwealth nevertheless requested that the indictments be dismissed and sought new indictments. Following his convictions in 2007, the defendant pleaded guilty to that portion of the attempted rape indictment that charged a further or subsequent offense.

[3] We acknowledge the amicus brief filed by the Committee for Public Counsel Services.

focused on the defendant. Officer Patricia Cummings posed undercover as a prostitute offering her foster child[4] for sexual services to the defendant.

Cummings was instructed to telephone a specific telephone number, ask for "Ron," and indicate that she was the foster mother to a young child whom she would be willing to offer for sexual services in exchange for money. At approximately 10:49 A.M., Cummings telephoned the cellular telephone number, and the defendant answered the telephone, identifying himself as "Kerry." She asked for "Ron," and less than ten seconds later, "Ron" came to the telephone. Cummings believed "Ron" to be the same person who answered the telephone and identified himself as "Kerry." The defendant admitted at trial that he pretended to be named "Ron" during this telephone call.

When the defendant came to the telephone, Cummings told him that her girl friend had given her the telephone number, and he said, "Yeah, she's cool." Cummings asked if she could meet him in person, and they agreed to meet later that morning at 11:15 A.M. at a Honey Farms convenience store in Worcester. When the defendant stated, "We don't have to do this if the kid's not going to be with you," Cummings told him to postpone the meeting to 11:30 A.M., so that she could arrive with the child.

She then drove to the convenience store and waited for the defendant. Eventually, the defendant approached her car and said, "I found you." When she got out of her vehicle, he told her that she did not fulfil the agreement because she did not bring a child with her to the meeting. He told her that she was "making it too hard for him," and she said that she had never done this before.

Cummings and the defendant then walked to his vehicle, where she asked him for fifty dollars "for good faith." The defendant refused to pay fifty dollars because she "did not have the kid." When they got into the defendant's vehicle, he stated, "I have a lot at stake, because I'm a professional." Cummings responded that she also did not want to get into trouble.

The defendant then began to ask for details about Cummings's foster child, including details about her age, demeanor, and sexual history. Cummings answered his questions and told him that she did not want the child to be injured, and asked him what

---

[4]There was never an actual child involved in this investigation.

he wanted to do. The defendant said he wanted "intercourse," and said that he had done this before.

After these negotiations, the defendant asked where the child was located, and Cummings said she was on Elm Street by Elm Park. She told the defendant that she would drive there and he could follow. The defendant agreed, and then they negotiated a fee for the child. Cummings told the defendant she would not take less than $200. In response to this, the defendant nodded his head up and down.

At that point, Cummings stepped out of the defendant's vehicle and walked toward her own vehicle. She gave a prearranged signal to other officers who were nearby, and they converged on the defendant's vehicle as he began to pull out of his parking spot and turn toward the exit of the parking lot, in the direction of Elm Park.

The officers asked the defendant to get out of his vehicle, and then arrested him. At the Worcester police department, the officers found $211 in cash on his person. After receiving Miranda warnings and waiving his rights, the defendant discussed his attraction to younger girls with Sergeant Michael Cappabianca, and told him that he "was asking for a young girl and [Officer Cummings] said she had a five year old."[5]

2. *Sufficiency of the evidence of attempted rape of a child.* The defendant argues that his conviction of attempt should be reversed because the Commonwealth failed to present sufficient evidence of an "overt act." The defendant did not move for a required finding of not guilty, so we consider whether failure to file such a motion created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 140 n.8 (2001), quoting *Commonwealth* v. *McGovern*, 397 Mass. 863, 867 (1986) ("We consider the legal sufficiency of the evidence even if a defendant fails to move for a required finding of not guilty because 'findings based on legally insufficient evidence are inherently serious enough to create a substantial risk

---

[5]The defendant testified that he thought Cummings was referring to a woman in her early twenties when she said she had "a young girl for sex." He testified that when he met Cummings and she mentioned a "four year old girl," he responded that he "[was] not going to do that," and was looking for someone in her twenties or thirties. He also denied the details of his conversation with Cappabianca at the police station, which was not recorded.

of miscarriage of justice' "); *Commonwealth* v. *Keita*, 429 Mass. 843, 844 (1999). Because the defendant's first claim of error involves the sufficiency of the evidence against him, we look at the evidence in the light most favorable to the Commonwealth, along with inferences that could reasonably be drawn.[6] *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975).

The crime of attempt is statutorily defined in G. L. c. 274, § 6. See note 1, *supra.* The elements required for a finding of attempt are (1) specific intent, (2) an overt act, and (3) nonachievement of the substantive crime. See *Commonwealth* v. *Ortiz*, 408 Mass. 463, 470 (1990). This court has interpreted this statute consistently since the court's opinion authored by Chief Justice Holmes in *Commonwealth* v. *Kennedy*, 170 Mass. 18 (1897), and *Commonwealth* v. *Peaslee*, 177 Mass. 267 (1901) (*Peaslee*), requiring a showing that the defendant, after preparing to commit the crime, has undertaken overt acts toward fulfilling the crime that "come near enough to the accomplishment of the substantive offence to be punishable." *Peaslee*, *supra* at 271.[7]

In *Peaslee*, the court described two classes of cases of attempt. As to the first class, the court noted:

---

[6]The defendant argues that the Commonwealth may rely only on the alleged overt acts set forth in the indictment. We disagree. The indictment follows the proper statutory form for attempt, alleging that the defendant "did meet with an individual, negotiate with and offered to pay that individual to be allowed to have sexual intercourse with a child under sixteen years of age, but did fail in the perpetration of said attempted offense or was intercepted and prevented in the execution of said attempted offense." See G. L. c. 277, § 79; *Commonwealth* v. *Senior*, 454 Mass. 12, 14 (2009). The defendant's reliance on *Commonwealth* v. *Burns*, 8 Mass. App. Ct. 194 (1979), is misplaced. The *Burns* case involved a challenge to the sufficiency of the complaint, not the evidence. Pursuant to G. L. c. 277, § 47A, all objections to an indictment must be raised prior to trial, and failure to raise such an objection by motion shall waive such objection. The defendant did not bring a pretrial motion contesting the indictment. Accordingly, the issue is waived, and we will look at the sufficiency of all the evidence presented by the Commonwealth at trial.

[7]Justice Gants incorrectly concludes that *Commonwealth* v. *Peaslee*, 177 Mass. 267 (1901) (*Peaslee*), "turns on the defendant's ultimate lack of intent." *Post* at 427 (Gants, J., dissenting in part). What was in dispute there, as here, were the defendant's actions at the time he had the requisite intent, and whether those actions constituted an overt act. This error enables Justice Gants to treat the fundamental reasoning of *Peaslee* as dicta, *post* at 429 (Gants, J., dissenting in part), and disregard the law of the Commonwealth as it consistently has been applied for a century.

"The most common types of an attempt are either an act which is intended to bring about the substantive crime and which sets in motion natural forces that would bring it about in the expected course of events but for an unforeseen interruption . . . or an act which is intended to bring about the substantive crime and would bring it about but for a mistake of judgment in a matter of nice estimate or experiment . . . . In either case the would-be criminal has done his last act."

*Id.* at 271.

The court went on to address the other class, the problem area of cases that fell short of the "last act" category or cases that were still in the "preparations" stage. With respect to those cases, the court stated:

"[N]ew considerations come in when further acts . . . are necessary before the substantive crime can come to pass. In this class of cases there is still a chance that the would-be criminal may change his mind. In strictness, such first steps cannot be described as an attempt, because that word suggests an act seemingly sufficient to accomplish the end, and has been supposed to have no other meaning. . . . That an overt act although coupled with an intent to commit the crime commonly is not punishable *if further acts are contemplated as needful,* is expressed in the familiar rule that preparation is not an attempt. *But some preparations may amount to an attempt.* It is a question of degree. If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a [crime] although there is still a locus penitentiae[8] in the need of a further exertion of the will to complete the crime. As was observed in a recent case, the degree of proximity held sufficient may vary with circumstances, including among other things the apprehension which the particular crime is calculated to excite. *Commonwealth* v. *Kennedy,* 170 Mass. 18, 22 (1897)." (Emphasis added and citation omitted.)

*Peaslee, supra* at 271-272.

The case now before us falls into that second class of cases

---

[8]An opportunity for changing one's mind or undoing what has been done. See Black's Law Dictionary 959 (8th ed. 2004).

and requires us to determine if the evidence of preparations taken by the defendant proceeded sufficiently close to the substantive crime to amount to an attempt. Factors to take into account in determining how proximate the overt act must be to the commission of the substantive offense are the gravity of the crime, the uncertainty of the result, and the seriousness of any threatened danger. *Commonwealth* v. *Kennedy, supra* at 22.[9]

We note that many States[10] have adopted the Model Penal Code's formulation for attempt — a less stringent formulation focusing on the actions taken by the defendant toward attaining the substantive offense rather than what the defendant had left to do before reaching the substantive crime.[11] This formulation makes convictions easier to reach.[12] Of course, "the creation of crimes is not for this court to determine, but for the Legislature. Our function is merely that of discovering the meaning of the words that the Legislature has used, bearing in mind that under the American system of law a citizen is not to be punished criminally unless his deed falls plainly within the words of the statutory prohibition, construed naturally." *Commonwealth* v. *Corbett*, 307 Mass. 7, 8 (1940). Any reformulation of the statutory crime of attempt is a matter for the Legislature.[13] See art. 30 of the

[9]Justice Gants states that the court requires the defendant to be *physically present* at the scene of the crime to be guilty of attempt, *post* at 430 (Gants, J., dissenting in part). We have no such requirement. The language of *Peaslee* requires a defendant to have the requisite intent at "a time and place where he was able to carry it out." *Peaslee, supra* at 273-274. We take into account the seriousness of any threatened danger in determining how close a defendant must be to the commission of the crime to be guilty of attempt. This proximity is determined on a case-by-case basis. Here, where the police were orchestrating the scene, the defendant would need to be very close to the location of the hypothetical child to be guilty of attempt.

[10]2 W.R. LaFave, Substantive Criminal Law § 11.4(e), at 226 n.67 (2d ed. 2003).

[11]The Model Penal Code looks to a "substantial step in a course of conduct planned to culminate in [the] commission of the crime," which step was "strongly corroborative of the actor's criminal purpose." Model Penal Code and Commentaries § 5.01(1)(c) & (2), at 296 (1985) (criminal attempt).

[12]The Legislature relaxed the strictures of the *Peaslee* case with respect to attempts to burn certain buildings, structures, or property when it enacted G. L. c. 266, § 5A, inserted by St. 1932, c. 192, § 5. See *Commonwealth* v. *Ali*, 7 Mass. App. Ct. 120 (1979).

[13]Contrary to the view taken by Justice Gants, we have not created a fourth element; rather, we have applied factors enunciated in *Peaslee* to determine whether the defendant undertook an overt act while having the requisite intent

Massachusetts Declaration of Rights.[14] In Massachusetts, a defendant must have the present opportunity to commit the substantive crime. Accordingly, we look to the actions left to be taken, or the "distance or gap between the defendant's actions and the (unachieved) goal of the consummated crime — the distance must be relatively short, the gap narrow, if the defendant is to be held guilty of a criminal attempt." *Commonwealth* v. *Hamel,* 52 Mass. App. Ct. 250, 258 (2001).

As previously stated, we must determine whether, under the facts of this case, the defendant's actions were merely in preparation to commit the crime or if his actions constitute the crime of attempt. Here, the defendant met Cummings in a parking lot to arrange to have sex with a young child. He expressed his displeasure that the child was not in the car with Cummings. Cummings and the defendant then negotiated for sex with the child, coming to an agreement that she would provide her four year old foster daughter to him for sexual intercourse in exchange for $200. After reaching an agreement, she told the defendant to follow her to "Elm Street, by Elm Park," where the child was waiting. He began to drive his vehicle out of the parking spot, turning in the direction of the exit nearest Elm Park, which was approximately one mile away.

However, even though Cummings and the defendant came to an agreement, he had yet to see a child and did not know the exact location of the child. He had yet to follow Cummings to any type of house or park, and he had not yet paid for the child.

sufficient to warrant a conviction of the crime of attempt. It is Justice Gants who would add a fourth element, the "dangerous proximity test," that is based on works of commentators. *Post* at 429-430 (Gants, J., dissenting in part). The formulation derives from the dissenting opinion of Justice Holmes in *Hyde* v. *United States,* 225 U.S. 347, 388 (1912), which involved a Federal conspiracy statute. Justice Holmes used the phrase "dangerously close" to differentiate the type of act needed to prove attempt from the more remote act, even unrelated to the substantive crime, needed to prove conspiracy. We have never used either phrase when analyzing an attempt crime, and we do not find those phrases helpful.

[14]Although the Legislature considered a statutory change in 1972 that would have brought Massachusetts law closer to the Model Penal Code, see Proposed Criminal Code of Massachusetts c. 263, § 45 (b) (1972) (criminal attempt), the Legislature did not enact such a statute for general attempt. General Laws c. 274, § 6, remains the general attempt statute, as interpreted for over a century. See note 1, *supra.*

The preparation and negotiation, although sufficient to warrant a guilty verdict of solicitation, did not come near enough — in time or ability — to the substantive crime of attempted rape to sustain a guilty verdict. The defendant must have had "a present intent to accomplish the crime without much delay, and to have had this intent at a time and place where he was able to carry it out." *Peaslee, supra* at 273-274.

In *Commonwealth* v. *Ortiz,* 408 Mass. 463, 464-465, 472 (1990), this court's most recent decision regarding the overt act requirement, we determined that where the defendant got into an automobile with a fully loaded firearm and drove to the neighborhood where a foe lived, circling the block six times in search of the person, and then drove home, there was evidence that the defendant "intended and prepared for an assault and battery by means of a dangerous weapon," but there was not enough evidence to show an overt act that would render the defendant guilty of attempt. Similarly, in *Commonwealth* v. *Hamel, supra* at 256-260, the Appeals Court found that where the defendant solicited two "hitmen" to commit four murders, made partial payment, described the intended victims, and drew sketches of the home of three of the victims, these preparations did not constitute an overt act within the meaning of the statute that came close enough to the commission of the murders. In each case, the court required that the defendant be very near to the actual commission of the substantive crime in order to be found guilty of attempt. Although the evidence in the instant case is sufficient to show that the defendant intended and prepared for the rape of a child, it is not sufficient to show that he undertook an overt act that put him so near — in time *or* ability — to the completion of the crime as to be guilty of attempt.

The Commonwealth argues that in addition to the preparations, the defendant's actions in agreeing to follow Cummings and driving his vehicle out of the parking space and into the parking lot facing the exit nearest to Elm Park are sufficient overt acts for the jury to find him guilty of attempted rape. We disagree. Under the statutory interpretation as set forth in *Peaslee, Commonwealth* v. *Kennedy, supra,* and *Commonwealth* v. *Ortiz, supra,* the defendant was not proximate enough to committing rape of a child to find him guilty of attempt. While the crime of

rape of a child is a very grave crime, its commission was still far from certain. The defendant was more than a mile from a vague location — "Elm Street, by Elm Park" and he had not paid any money to Cummings. As in *Commonwealth* v. *Ortiz, supra*, the defendant did not know where exactly the child was located, as no evidence was presented that he knew where "Elm Street, by Elm Park" was located. In following Cummings, he could have decided to return to work and not commit the crime. In addition, there is no evidence that he had formulated a plan as to exactly where, or when, he would commit the crime.[15]

We conclude that the evidence presented by the Commonwealth of an overt act establishing attempt was not sufficient to survive a motion for a required finding of not guilty, had one been filed.[16] Because the defendant's conviction of attempted rape rests on insufficient evidence, we are confronted by circumstances that represent per se a substantial risk of a miscarriage of justice.[17] See *Commonwealth* v. *Grandison*, 433 Mass. 135, 140 n.8 (2001). Accordingly, the defendant's conviction of attempted rape of a child must be reversed.

3. *Statutory prohibition on agreeing to pay for sexual intercourse with a child.* In 2004, G. L. c. 272, § 53A, inserted by St. 1983, c. 66, § 2, defined the crime of offering or agreeing to engage in sexual conduct for a fee as follows:

"Any person who engages, agrees to engage, or offers

---

[15]Contrary to Justice Gants's statement, *post* at 425 (Gants, J., dissenting in part), nothing in this opinion suggests that the defendant must be physically present at the scene of his intended crime before criminal liability for an attempt will attach.

[16]The parties have not addressed the third element of attempt — the failure to complete the substantive offense. Under our jurisprudence, the defendant may be interrupted or withdraw from an attempted crime at a very late point. See *Peaslee, supra* at 271 (defendant drove within one-quarter mile of location of proposed crime, changed his mind, and drove away). However, the proximity to the substantive crime from which a defendant may withdraw varies from case to case, based on "the gravity of the crime, the uncertainty of the result, and the seriousness of the apprehension." *Commonwealth* v. *Kennedy*, 170 Mass. 18, 22 (1897).

[17]The defendant also asserts that his counsel was constitutionally ineffective for failing to file a motion for a required finding of not guilty on the count of attempted rape. Because we reverse the defendant's conviction of attempted rape of a child based on the sufficiency of the evidence, we need not address this particular ineffective assistance of counsel claim.

to engage in sexual conduct with another person in return for a fee, or any person who pays, agrees to pay or offers to pay another person to engage in sexual conduct, or to agree to engage in sexual conduct with another natural person may be punished . . . ."

The defendant argues that the statute "only criminalized solicitations for sex between a customer and a prostitute in exchange for a fee" and that the defendant's conduct, in agreeing to pay for sexual conduct with a third person, is not penalized under the statute. We disagree. While the solicitation statute was rewritten in 2006 to provide an additional penalty for one who makes an agreement specifically to pay for sexual intercourse with a child, the original statute also covers the defendant's behavior, albeit with a lesser penalty.

The statute under which the defendant was prosecuted contains no language limiting its application, as suggested by the defendant, to a prostitute and a customer. Stated otherwise, the statute contains no express or implied limitation that the individuals who make the agreement engage in sexual conduct with each other. *Commissioner of Correction* v. *Superior Court Dep't of the Trial Court for the County of Worcester*, 446 Mass. 123, 124 (2006), quoting *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983) ("primary source of insight into the intent of the Legislature is the language of the statute," and "[s]tatutory language should be given effect consistent with its plain meaning"). The second clause of the statute states that where person A pays, agrees to pay, or offers to pay person B for an agreement whereby person A can engage in sexual conduct with person C, person A may be punished. The defendant agreed to pay money to Cummings, in exchange for an agreement allowing the defendant to engage in sexual conduct with Cummings's foster child. This is sufficient under the statute.

If the statute were limited as the defendant suggests, one who pays a "pimp" for sexual conduct with another could not be convicted under the statute. There is no indication that the Legislature intended such a limitation. "If the language of the statute is 'fairly susceptible [to] a construction that would lead to a logical and sensible result,' we will construe [it] so 'as to make [it an] effectual piece of legislation in harmony with common sense

and sound reason.' " *Commonwealth* v. *Dale D.*, 431 Mass. 757, 760 (2000), quoting *Commonwealth* v. *Williams*, 427 Mass. 59, 62 (1998).[18] Here, the defendant made an agreement to pay Cummings so that he could engage in sexual conduct with a child. We conclude that this conduct is covered under the language of G. L. c. 272, § 53A.

The defendant also argues that the solicitation statute is constitutionally void for vagueness. However, he failed to preserve the issue in a motion for a required finding of not guilty. Accordingly, we analyze whether any error creates a substantial risk of a miscarriage of justice. *Commonwealth* v. *Oakes*, 407 Mass. 92, 94-95 (1990). "A penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985), quoting *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983).

Here, the statute sufficiently informed the defendant that agreeing to pay money in order to have sexual intercourse with a young child was prohibited. The statute defines the criminal offense, and it is "improbable that any competent adult, informed by common sense, life experience, and contemporary values, would reach any different conclusion, or would be surprised to learn that the defendant's words and deeds amounted to an offer to pay for a type of sexual conduct which § 53A proscribes." *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct. 313, 318 (1997) (finding that defendant should have known solicitation statute included sexually intimate contact). We conclude that G. L. c. 272, § 53A, is not unconstitutionally vague. There is no error.

4. *Duplicative convictions.* The defendant next argues that his convictions of solicitation and attempt were duplicative and violated his double jeopardy rights under the Fifth Amendment to the United States Constitution. Because we reverse the defendant's conviction of attempted rape, only the conviction of solicitation remains. Accordingly, this argument is moot.

---

[18]The defendant did not object to the portion of the judge's instructions regarding the nature of this offense that the "essence of this crime as alleged is the offer or agreements to pay for sexual conduct with another person . . . and does not require that [the other] person actually exist."

5. *Response to jury question.* During deliberations, the jury asked the judge, "Is a nod sufficient in the eyes of the Court to indicate an affirmative response?" The judge conferred with counsel, and suggested that he would instruct the jury that "whether there was a nod and, if so, whether it indicated an affirmative response, are factual issues, not issues of law, which are for you the jury to decide, based on all of the evidence and on the law as I've already given it to you." Defense counsel objected, requesting that the judge also reinstruct the jury that "whether there was an agreement or offer is also a factual matter." The instruction suggested by defense counsel was given by the judge at the close of trial, and the defense counsel did not object to the instruction. The judge responded that he would not reinstruct the jury as requested by defense counsel, but would answer only the question asked by the jury.

The defendant asserts that the judge's supplemental instruction, without repeating the earlier, original instruction, may have misled the jury as to the evidence necessary to establish the presence of an agreement. We disagree.

"The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly." *Commonwealth* v. *Robinson*, 449 Mass. 1, 7-8 (2007), quoting *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997). If appropriate, the judge need only consider the question asked by the jury, and is not required to instruct on any other matters in response to the question. *Commonwealth* v. *Amazeen*, 375 Mass. 73, 82 (1978).

Here, the jury had already been instructed that whether there was an offer or agreement was a factual matter for them to decide. Their question asked only whether a nod may be sufficient to indicate an affirmative response. The judge noted that repeating the instruction on offer or agreement would go beyond the scope of the question; accordingly, he answered only the question asked by the jury. In *Commonwealth* v. *Amazeen*, *supra* at 82, this court held that the judge correctly responded to a question asked by the jury, and it was not error to decline to repeat portions of the main charge that were beyond the scope of the jury's question. Because the supplemental instruction appropriately responded to the jury's question, there was no abuse of discretion.

6. *Ineffective assistance of counsel.* The defendant next argues that trial counsel was constitutionally ineffective for (1) failing to object to the prosecutor's line of questioning and argument regarding the defendant's credibility; (2) failing to move for a required finding of not guilty on the attempted rape indictment[19]; and (3) failing to move for a required finding of not guilty on the solicitation indictment.

In assessing a claim for ineffective assistance of counsel, the court will look to "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). A strategic decision by counsel will be deemed constitutionally ineffective only if it was manifestly unreasonable at the time it was made. *Commonwealth* v. *Adams*, 374 Mass. 722, 728-730 (1978).

The defendant's first claim of error involves questioning and argument relating to the defendant's credibility. During the defendant's direct testimony, he testified that he did not agree with portions of Cappabianca's report and testimony regarding their conversation after the defendant's arrest. During cross-examination, the prosecutor asked the defendant about other portions of Cappabianca's report and testimony with which he disagreed. The defendant argues that the prosecutor's technique of confronting the defendant with specific postarrest statements that he failed to mention on direct examination was an inappropriate challenge to his credibility, and defense counsel should have objected and attempted to redirect. We disagree.

First, the defendant did not raise these claims of ineffective assistance of counsel in a motion for a new trial, which is the preferred method, as the trial record alone cannot explain the strategy of trial counsel. *Commonwealth* v. *Zinser*, 446 Mass. 807, 810 (2006). *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002). Second, "[w]hen a defendant testifies on his own behalf, he exposes himself to cross-examination as would any

---

[19]As discussed, see note 17, *supra*, we need not consider this argument, as the defendant's conviction of attempted rape of a child has been reversed.

witness." *Commonwealth* v. *Sleeper*, 435 Mass. 581, 595 (2002), citing *Jenkins* v. *Anderson*, 447 U.S. 231, 236 (1980). The cross-examination followed a similar course as his direct examination and was designed to undermine the defendant's credibility. The defendant cannot select the subjects on which he will be cross-examined. Here, the cross-examination was fair and the prosecutor's argument was fairly grounded in the evidence.

The defendant also argues that defense counsel conceded that he made a mistake on direct examination, by saying, "[N]ow, shame on me, I didn't ask my client line by line, 'Well, sir, I'm going to read you this statement and you tell me what you disagree with,' shame on me, okay, that I didn't say, 'Do you agree with this, do you agree with this,' wasn't he on the stand long enough, did we need any more questions, I didn't think you did, but, you know, shame on me, if it's my fault, it's my fault, okay." While the defendant argues that this "admission of error" rules out any tactical motive for the attorney's conduct, based on the trial record, we perceive counsel's remark as a backhanded comment that the prosecutor's cross-examination was an exercise in nitpicking. Defense counsel may have had a tactical reason for making such a statement during his closing argument. However, regardless of defense counsel's strategy, the decisions made by counsel — not to object to the prosecutor's cross-examination or closing argument — do not appear unreasonable at the time they were made. "A strategic or tactical decision by counsel will not be considered ineffective assistance unless that decision was 'manifestly unreasonable' when made." *Commonwealth* v. *Ogden O.*, 448 Mass. 798, 806 (2007), quoting *Commonwealth* v. *Adams, supra* at 728. Because it was appropriate for the prosecutor to challenge the defendant's credibility, defense counsel may have made a tactical determination that his objections would be overruled; as such, his decision not to object or seek a curative instruction was not manifestly unreasonable. See *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. 526, 527 (1996), cert. denied, 520 U.S. 1245 (1997) ("failing to pursue a futile tactic does not amount to constitutional ineffectiveness"). See also *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942).

The defendant's remaining claim of ineffective assistance is the defense counsel's failure to move for a required finding of

not guilty on the solicitation indictment. Because we have determined that the defendant's conduct was included under the statute, defense counsel's decision not to move for a required finding of not guilty does not constitute ineffective assistance of counsel.

7. *Conclusion.* For the foregoing reasons, the defendant's conviction of attempted rape of a child is reversed and his conviction of offering or agreeing to engage in sexual conduct for a fee is affirmed.

*So ordered.*

CORDY, J. (dissenting in part, with whom Ireland, J., joins). I concur in the court's conclusion that the defendant's conviction of agreeing to pay another person to engage in sexual conduct in violation of G. L. c. 272, § 53A, should be affirmed. I do not agree, however, that the evidence was insufficient to support the defendant's conviction of attempted rape of a child.

The evidence readily established that the defendant had the requisite intent to commit the crime of attempted rape. It also established that at the time of his arrest, he had moved beyond the mere preparation phase of the crime (identifying a supplier and negotiating the price and the sex acts for which the child was sought) and was on his way to a nearby location to commit the crime. These are sufficient acts toward the commission of the crime to satisfy the requirements of our attempt statute, G. L. c. 274, § 6, and come near enough to the accomplishment of the substantive offense to be punishable. In my view, *Commonwealth* v. *Peaslee*, 177 Mass. 267 (1901), is not to the contrary. Had the defendant in *Peaslee* been arrested on his way to set the fire (for which he had made preparations) rather than after he had abandoned the plan (and his criminal intent), I have little doubt that his conviction of attempted arson would have been affirmed.

I would affirm the defendant's conviction of attempted rape of a child.

GANTS, J. (dissenting in part, with whom Ireland, J., joins). While I agree with the court that the defendant's conviction of

agreeing to pay another person to engage in sexual conduct, in violation of G. L. c. 272, § 53A, should be affirmed, I do not agree with the court's interpretation of the criminal attempt statute, G. L. c. 274, § 6, or with the court's conclusion, based on that interpretation, that the evidence in this case, as a matter of law, was insufficient to support the defendant's conviction of attempted rape of a child. Therefore, I respectfully dissent.

The court's opinion correctly recognizes that, in interpreting the language of criminal statutes, "[o]ur function is merely that of discovering the meaning of the words that the Legislature has used, bearing in mind that under the American system of law a citizen is not to be punished criminally unless his deed falls plainly within the words of the statutory prohibition, construed naturally." *Ante* at 414, quoting *Commonwealth* v. *Corbett*, 307 Mass. 7, 8 (1940). The Massachusetts criminal attempt statute was enacted in 1836, and the terms we interpret and apply today have not materially changed since that time.[1] The statute reads: "Whoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished . . . ." G. L. c. 274, § 6. The court's opinion correctly recognizes, based on the language of the statute, that the elements of an attempt are (1) the specific intent to commit a crime; (2) an overt act toward the commission of the crime; and (3) a failure to perpetrate the crime. *Ante* at 412. It is equally plain from the language of the statute that the Legislature recognized that attempted crimes fall into two categories. The first category of attempt occurs when a wrongdoer commits the last act necessary to complete the intended crime but, for some reason, such as bad aim or bad luck, fails to perpetrate the crime. Determining criminal liability for this sort of failed attempt is uncomplicated and noncontroversial.

The second category of attempt occurs when a wrongdoer fails to accomplish the underlying crime because he is intercepted

---

[1] Revised Statutes (1836), c. 133, § 12. Amendments to the statute have introduced minor changes to update its terminology and adjust the penalties applicable to attempts involving differing classes of underlying offenses. For modifications of the first type, see G.S. (1860), c. 168, § 8; R.L. (1902), c. 215, § 6; for modifications of the second type, see St. 1911, c. 130; St. 1924, c. 164.

or otherwise prevented from perpetrating the crime by the intervention of police or some other third party before he is able to commit the last act necessary to complete his intended crime. The law governing criminal liability for this second category is confused, complicated, and controversial. The instant case falls into this difficult category of intercepted attempts. Under the standard advanced by the court today, a defendant may be convicted of this second category of criminal attempt only if he is intercepted at a time and place where he is able to carry out the completed crime. *Ante* at 415-416. The practical application of this rule, as revealed in the court's decision in the present case, can only mean that a defendant must be physically present at the scene of his intended crime before criminal liability for an attempt will attach, regardless of any other considerations relating to his conduct and intention. The larger consequence of this standard and the court's application of it in the present case is to conflate the two distinct categories of attempt and to make it extraordinarily difficult (and, for police and any intended victim, dangerous) to obtain convictions of criminal attempts of the second category. The rule is supported neither by the terms of the governing statute nor by our case law.

We recognized in 1990 that "[t]here is little Massachusetts case law construing and applying [G. L. c. 274, § 6]." *Commonwealth* v. *Ortiz*, 408 Mass. 463, 470 (1990). That statement remains true today, because in the interval between *Ortiz* and the court's decision today, we have not decided a case that required us to construe and apply the statute. What little case law we have has focused less on the language of G. L. c. 274, § 6, and more on the analysis of the law of attempt articulated by Chief Justice Holmes in two decisions of this court, both of which are more than a century old: *Commonwealth* v. *Kennedy*, 170 Mass. 18 (1897) (*Kennedy*), and *Commonwealth* v. *Peaslee*, 177 Mass. 267 (1901) (*Peaslee*).[2]

*Kennedy* involved a failed murder plot that fell clearly within

---

[2]In these two decisions, Chief Justice Holmes essentially superimposed a common-law overlay on the criminal attempt statute consistent with principles he had described in his treatise. See O.W. Holmes, Jr., The Common Law 65-70 (1881). As I discuss *infra*, this common-law overlay added an element of dangerous proximity that is not discernible from the language of the statute. Today, except where necessary to construe a statute as constitutional, we

the first category of attempt. The evidence at trial was that deadly rat poison had been found on the intended victim's empty "mustache cup" on the same day that he and others took tea together, and those who drank tea were poisoned. *Kennedy*, *supra* at 20, 23. The court found this evidence, when combined, it appears, with proof that the defendant had applied the poison, sufficient to affirm his conviction of attempted murder. *Id.* at 22. In doing so, the court noted that the defendant had committed the last act necessary to accomplish his intended crime, stating that "[u]sually acts which are expected to bring about the end without further interference on the part of the criminal are near enough" to the intended criminal result to constitute an attempt to commit the crime, "unless the expectation is very absurd." *Id.* at 21.

Addressing the Commonwealth's failure to allege that the dose applied was large enough to kill, the court concluded that "[a]ny unlawful application of poison is an evil which threatens death, according to common apprehension . . . ." *Id.* at 22. The court added: "[T]he gravity of the crime, the uncertainty of the result, and the seriousness of the apprehension, coupled with the great harm likely to result from poison even if not enough to kill, would warrant holding the liability for an attempt to begin at a point more remote from the possibility of accomplishing what is expected than might be the case with lighter crimes." *Id.* In essence, the court held that the act of poisoning another person is so fraught with danger that a defendant may be found guilty of attempted murder, provided he intended to kill, even if later investigation reveals he would have failed to accomplish the murder because of a miscalculation as to the quantity of poison necessary to achieve his end.

*Peaslee*, by contrast, does not concern a defendant who had taken the last act in attempting his crime. In *Peaslee*, the defend-

---

would not add elements derived from the common law to statutory criminal offenses. I do not, however, challenge the common-law requirements imposed by *Commonwealth* v. *Kennedy*, 170 Mass. 18 (1897) (*Kennedy*), and *Commonwealth* v. *Peaslee*, 177 Mass. 267 (1901) (*Peaslee*), because I recognize that, by repeatedly, albeit modestly, amending the statute after 1901 without undoing any of the common-law overlay added by these cases, the Legislature has implicitly approved or, at least, acquiesced in this judicial interpretation of G. L. c. 274, § 6. See *Commonwealth* v. *Rivera*, 445 Mass. 119, 128 (2005); 2B N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction §§ 49:5, 49:7, 49:9 (2008).

ant had arranged combustibles in a building that he planned to burn in such a way that all that remained to be done to set fire to the building was to move a candle from a nearby shelf to a piece of wood set in a pan of turpentine and light it. *Id.* at 271. The defendant and a young man drove to within one-quarter mile from the building, apparently with the intent of lighting the candle, but before reaching his destination, the defendant changed his mind about setting the fire and drove away. *Id.* at 270. Even though the defendant had abandoned the attempt before he committed the last acts needed to accomplish the arson (the placement and lighting of the candle) without any intervention by the police or any third party, the Commonwealth's indictment charged him with attempted arson, and a jury convicted him. On appeal, this court held the evidence to be insufficient as a matter of law to support the conviction, declaring:

> "A mere collection and preparation of materials in a room for the purpose of setting fire to them, unaccompanied by any present intent to set the fire, would be too remote [to support a conviction of attempt]. If the accused intended to rely upon his own hands to the end, he must be shown to have had a present intent to accomplish the crime without much delay, and to have had this intent at a time and place where he was able to carry it out."

*Id.* at 273-274. The court's reversal in *Peaslee* turns on the defendant's ultimate lack of intent, not on his failure to arrive at or close enough to the scene of the planned crime. His change of course is determinative not because it removes him from the scene but because it demonstrates he no longer holds the specific intent to commit the crime that is required for conviction.[3]

All crimes of attempt — whether of the first category (failed

[3]The court contends that concluding that *Peaslee* turns on the defendant's ultimate lack of intent is incorrect, and declares that the holding in *Peaslee* rested on the conclusion that, when the defendant had the requisite intent, his actions had not constituted an overt act. *Ante* at 412 n.7. Under this interpretation of *Peaslee*, the defendant would have been guilty of attempted arson if he had entered the building to set the fire with the requisite intent but changed his mind before doing so. I do not agree that a defendant can be found guilty of attempting a crime if, in the absence of any intervention, before having actually committed the crime, he changes his mind and walks away, even if he had reached a time and place where he was able to carry out the crime before abandoning his purpose.

attempts) or the second (interrupted attempts) — require the Commonwealth to prove the defendant's continuing and "present intent" at the moment where he takes his last relevant act. The only difference between the two categories is that, in a failed attempt, the defendant's state of mind is examined at the time he commits the last act necessary to accomplish the crime. In an interrupted attempt, the defendant's state of mind is examined at the moment of interruption. Where, as in *Peaslee*, a defendant has not been intercepted in his criminal effort, he can only be convicted under a "last act" theory of attempt. Therefore, to convict, the finder of fact must find that the defendant had a specific and present intent to commit the crime at the place where the last act was to occur (here, the building), not at some earlier time (here, for instance, when the defendant initially arranged the combustibles or when he began to travel toward the building). Failing this test, the evidence in *Peaslee* could not support a conviction.

Although there had been no intervention by the police or a third party to interrupt the defendant in *Peaslee*, the court nonetheless chose to consider whether a defendant could be convicted where further acts were required to accomplish the crime — the second category of attempt under the statute. The court declared that, in some circumstances, such a defendant could be convicted, even though "[i]n this class of cases there is still a chance that the would-be criminal may change his mind" before his planned last act. *Id.* at 272. Essentially defining all conduct short of the last act as "preparation," the court stated:

> "[S]ome preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a misdemeanor although there is still a locus penitentiae [the opportunity to withdraw] in the need of a further exertion of the will to complete the crime. As was observed in a recent case [*Kennedy*], the degree of proximity held sufficient may vary with circumstances, including among other things the apprehension which the particular crime is calculated to excite."

*Id.*[4]

---

[4] The court then cited at least two cases in which the defendant was intercepted

Informed in part by words used by Justice Holmes in dissent when he served on the United States Supreme Court, where he declared that there "must be dangerous proximity to success" to constitute a criminal attempt, *Hyde* v. *United States*, 225 U.S. 347, 388 (1912) (Holmes, J., dissenting), the approach described in dicta in *Peaslee* has come to be characterized as the "dangerous proximity test."[5] See Model Penal Code and Commentaries § 5.01 comment 5(b), at 322 (1985); S.H. Kadish & S.J. Schulhofer, Criminal Law and Its Processes 566-567 & notes (7th ed. 2001); Stuart, The Actus Reus in Attempts, 1970 Crim. L. Rev. 505, 508. *Peaslee*'s dangerous proximity test essentially adds a fourth element to the statutory elements of an attempt, which applies only to the second category of cases: in order to convict a defendant who has been interrupted before completing his final act, the defendant must have come so near to the accomplishment of the crime that it is nearly certain that the crime would have been committed if the police or a third party had not intervened. In the language Justice Holmes employed in *Hyde* v. *United States, supra* at 387 (Holmes, J., dissenting), an attempt that has not reached the final act necessary to commit the underlying crime has reached the zone of dangerous proximity, and thus may support a conviction, when "the act and the natural conditions present or supposed to be present are not enough to do the harm without a further act, but where it is so near to the result that if coupled with an intent to produce that result, the *danger* is very great" (emphasis added). The proximity *Peaslee*

or otherwise prevented from perpetrating the crime by the police or a third party, thereby demonstrating that it intended this formulation to apply to the second category of attempts. See *Peaslee, supra* at 272, citing *Commonwealth* v. *McLaughlin*, 105 Mass. 460, 461-462 (1870) (defendant prevented from poisoning horse by intervention of watchman), and *Regina* v. *Taylor*, 1 Fost. & F. 511 (1859) (defendant desisted from setting fire to stack of corn on discovering he was observed).

[5] In *Hyde* v. *United States*, 225 U.S. 347, 387-388 (1912) (Holmes, J., dissenting), Justice Holmes discussed criminal attempt in distinguishing conspiracy, the crime at issue in that case, from attempt. That our own opinions have not embraced this nomenclature, as the majority points out, is not material. *Ante* at 414 n.13. The terminology does nothing more than conveniently describe the analysis introduced by *Kennedy* and *Peaslee*. I note that a reliance on this well-recognized shorthand is not, in any event, entirely absent from our case law. See *Commonwealth* v. *Hebert*, 373 Mass. 535, 543 (1977) (Quirico, J., concurring); *Commonwealth* v. *Hamel*, 52 Mass. App. Ct. 250, 259 (2001).

conceives of is dangerous because it indicates a high probability, absent intervention, that a completed crime will follow. See *Peaslee, supra* at 272.

Today, the court effectively rejects *Peaslee's* fourth element and replaces it with a more restrictive alternative: when a defendant is interrupted in the commission of a crime, unless he has directed another to commit the crime, he must be physically present at the place where he is able to carry out the crime in order to be found guilty of criminal attempt. In short, the court changes *Peaslee's* fourth element from dangerous proximity to physical proximity, requiring the defendant's physical presence at the scene of the intended crime. The court then applies its new fourth element to conclude that the evidence in the instant case is insufficient as a matter of law to support the defendant's conviction of attempted rape because the defendant was apprehended in the parking lot when he was following the undercover agent to the place where he was to rape the child and had yet to reach the place where he had been told his anticipated child victim was located.[6]

The court errs in four ways in requiring the element of physi-

---

[6]The court contends that I err in stating that the decision in this case requires a defendant to be physically present at the scene of the crime to be guilty of attempt. The court, however, agrees that a defendant cannot be found guilty of attempt unless he intends to commit the crime at "a time and place where he was able to carry it out." *Ante* at 414 n.9, quoting *Peaslee, supra* at 273-274. I fail to see how a defendant can be at a time and place where he is able to carry out a crime without being physically present at the scene of the crime.

The court also contends that its approach does not add a fourth element to the statute, but simply defines an overt act, which is the second element of the statute. The phrase "overt act" is not used in the attempt statute; the phrase used is "any act toward its commission," G. L. c. 274, § 6, which parallels language the law generally employs to define an overt act. See 18 U.S.C. § 371 (2006) (requiring for purposes of Federal conspiracy statute "any act to effect the object of the conspiracy"); *United States* v. *Bayer*, 331 U.S. 532, 542 (1947) (under Federal law, crime of conspiracy is punishable "if any overt act is taken in pursuit of it"). We employ similar language to clarify that, contrary to Federal law, Massachusetts does not require an overt act to convict for conspiracy. See *Commonwealth* v. *Judd*, 2 Mass. 329, 337 (1807) ("any act done in pursuance of [the object of the conspiracy] is no constituent part of the offence, but merely an aggravation of it"). The court, however, does not rely on that customary definition of overt act in the context of criminal attempts, but instead defines an overt act as an act towards the commission of a crime that is near, in time or ability, to the completion of the

cal proximity. First, the court fashions the element of physical proximity from the language in *Peaslee* that requires, "[i]f the accused intended to rely upon his own hands to the end, he must be shown to have had a present intent to accomplish the crime without much delay, and to have had this intent at a time and place where he was able to carry it out." *Peaslee, supra* at 273-274. In the context of *Peaslee*, this language simply means that, when criminal liability is evaluated under rules that govern the first category of attempt cases, the specific intent of the defendant must be evaluated at the time and place he commits the last act necessary to perpetrate the attempted offense, not at an earlier time when he is preparing to commit the offense. Regardless of how extensive the defendant's preparation, if he changes his mind before committing the last act, as the defendant did in *Peaslee*, he cannot be guilty of attempt. The language was not intended to mean that, in the second category of attempt cases, an attempted crime thwarted by the police may constitute an attempted crime *only* if it is thwarted at the time and place the offense was to be committed.[7]

Second, the requirement of an element of physical proximity ignores other language in *Peaslee* that *was* intended to address the second category of attempt cases, and that, in some circumstances, would allow a finding of dangerous proximity without physical proximity. "[S]ome preparations may amount to an attempt," *id.* at 272, but nowhere does *Peaslee* limit this allowance only to preparations that bring the defendant to the scene of his intended crime. "[T]he degree of proximity held sufficient" for a preparation to constitute a crime of attempt "may vary with circumstances." *Peaslee, supra*, citing *Kennedy, supra*

intended crime, taking into account the gravity of the crime, the uncertainty of the result, and the seriousness of the apprehension. *Ante* at 414 & n.13. In the end, whether this approach adds a fourth element or simply more narrowly defines the second element of an overt act is a question of semantics; the fact remains that, to win a conviction of criminal attempt, the court has required the Commonwealth to prove more than is required by the language of the attempt statute.

[7]The court in *Peaslee, supra* at 274, allows that the indictment would likely have been proved had the evidence shown the defendant had arrived at the scene but "been frightened by the police as he was about to light the candle." But this does not mean the defendant could have been convicted *only* under these facts.

at 22. Clearly, we must take this to mean that no absolute rule requires a defendant's physical presence at the scene of the intended crime in order to support criminal liability for attempt.[8] In the words of *Kennedy, supra,* "[e]very question of proximity must be determined by its own circumstances, and analogy is too imperfect to give much help." The court misinterprets *Peaslee* and *Kennedy* in declaring that there can be dangerous proximity only with physical proximity.

Third, the consequence of imposing a fourth element for criminal attempt that requires physical proximity will be to prevent the Commonwealth from prosecuting a large set of attempted crimes as such. Where, as here, no actual victim existed, the defendant could never have reached a "time and place where he was able to carry [out the crime]." See *Peaslee,* supra at 273-274. Even if an actual, potential child victim did exist, the Commonwealth, for all practical purposes, would not be able to prosecute any defendant for attempted rape because the police would not (and should not) endanger the psychological health of the child by permitting the defendant to reach the place where the defendant could commit the sexual crime against the child. In other cases, such as when police are investigating attempted bombings or attempted shootings, it may be too dangerous for them to postpone arrest until the defendant reaches the time and place of his intended crime, lest something go wrong and they are unable to prevent the commission of the crime. The practical consequence of the court's decision today is that the Commonwealth will need to make a perilous choice between allowing a suspect to reach the time and place of the commission of his intended crime before intervening or intervening earlier and thereby forfeiting any possibility of ever convicting him of the crime of attempt.[9] On television and in the movies, the police always arrive in the nick of time; in real life, waiting so long does not always work out so well.

---

[8]Even if physical proximity were required, *Kennedy* and *Peaslee* clearly would provide that the distance sufficient for physical proximity may vary with the facts of the underlying case and the nature of the substantive offense. See *Peaslee, supra* at 272; *Kennedy, supra* at 22. See also O.W. Holmes, Jr., The Common Law 68 (1881). Nothing in the case law would require that a defendant may be held criminally liable only if he is interrupted at the precise scene of his intended crime.

[9]The court explains that where, as here, the police are orchestrating the

Fourth, the question whether the defendant has come so near to the accomplishment of the crime that it is nearly certain that the crime would have been committed if the police or a third party had not intervened is a determination properly left to the jury. There is no need for the wooden formulation chosen today by the court that essentially declares as a matter of law that a defendant comes so near to the accomplishment of the crime that it is nearly certain that the crime would have been committed only when the defendant is physically present at the time and place where the offense is to be committed. In certain circumstances, such as where a defendant's intent is fixed and unwavering, a jury reasonably may conclude that it is nearly certain that the defendant would have completed the crime if the police had not intervened, even if the attempt is interrupted well before there is physical proximity.[10] The court's holding today erroneously declares that such a conclusion is never reasonable.

If the court had correctly interpreted *Peaslee* to require a fourth element of dangerous proximity, rather than of physical proximity, I believe that the evidence admitted at trial would be sufficient to permit a reasonable jury to have found that the defendant came so near to the accomplishment of the crime that it was nearly certain that the rape would have been committed if the police had not intervened (and if a young girl had in fact been brought to him). Viewing the evidence in the light most favorable to the Commonwealth, the defendant told the undercover officer that he previously had intercourse with children aged three to five or six years, but that he preferred five year olds. He asked whether the child had been "stretched," reflect-

---

operation, a defendant must be "very close to the location" of his hypothetical victim to be guilty of attempt. *Ante* at 414 n.9. This would apparently mean that criminal liability for an attempt should attach at a later stage where police have sustained the fiction of a potential victim than where a real victim is at risk, despite the fact that the defendant's conduct and intent is identical in the two cases. Whether the targeted victim actually exists or not, the defendant's conduct, intent, and culpability are the same. See *Commonwealth* v. *Bell,* 67 Mass. App. Ct. 266, 271 (2006); *Commonwealth* v. *Hamel,* 52 Mass. App. Ct. 250, 260 (2001). A defendant should not be exonerated simply because of "facts unknown to him which made it impossible for him to succeed." 2 W.R. LaFave, Substantive Criminal Law § 11.5(a), at 234 (2d ed. 2003).

[10]Likewise, "the point of intervention might be put further back" and still support conviction where a defendant has engaged in conduct that can have no innocent motive. See O.W. Holmes, Jr., The Common Law, *supra* at 69.

ing his intent to penetrate her, and specifically said he wanted "intercourse." He agreed to a price of $200, and had $211 in cash on his person when arrested. He was in his vehicle beginning to follow the undercover agent to Elm Park, where the undercover agent said the child was located, when the police arrested him. The jury reasonably could conclude that he had come so near to accomplishing the crime of rape of a child that it was nearly certain that he would have carried through with it had he not been intercepted by police.

The facts of this case are distinguishable from those in *Commonwealth* v. *Ortiz*, 408 Mass. 463 (1990), the most recent case in which this court considered whether the evidence was legally sufficient to support an attempt conviction. In the *Ortiz* case, the evidence at trial was that the defendant and his brother learned that a person with whom the family had been feuding had been at their father's apartment earlier that day carrying what appeared to be a handgun and looking for the defendant's brother. See *id.* at 464. Armed with a firearm and ammunition, the brothers traveled by automobile to the neighborhood where their unwanted visitor lived, drove around the block six times hoping to discover him, and, failing to see him, returned to the street near the father's apartment. See *id.* at 464-465. We found this evidence insufficient as a matter of law to support a conviction of attempted assault and battery by means of a dangerous weapon. *Id.* at 472. Because the defendant had not been intercepted or otherwise prevented from committing the assault and battery by the police or any third party before he returned to the area of his father's apartment, the court evaluated the conviction under standards applicable to the first rather than the second category of attempt offenses. The court's conclusion in the *Ortiz* decision that the evidence "did not warrant a finding of an overt act for which the defendant was responsible" was therefore dictated by the absence of a last necessary act — shooting at the intended victim after successfully locating him. *Id.* at 472.

The instant case, in contrast, falls into the second category of offenses, where no last necessary act is required, because the intervention of the police prevented the defendant from having the opportunity to commit the last necessary act. The proper focus here is whether the defendant had come so near to the

completion of the offense that a rational trier of fact reasonably may conclude that it was nearly certain that the defendant would have committed the crime in the absence of police intervention.

I would affirm the conviction of attempted rape of a child if the jury had been properly instructed as to the required element of dangerous proximity, but they were not. The lack of proper jury instructions poses a substantial risk of a miscarriage of justice because the evidence of an attempt here, while it may be legally sufficient, is not overwhelming.[11] The judge did not instruct the jury that the defendant must have come so near to the accomplishment of the crime that it was nearly certain that the crime would have been committed if the police or a third party had not intervened. Nor did the judge instruct the jury that the defendant must be close to the accomplishment of the crime. Instead, in discussing the second element that the Commonwealth must prove beyond a reasonable doubt under the statute, the judge instructed the jury:

> "The overt act must be a real step for carrying out the crime; preliminary preparations to commit a crime are not enough. The overt act has to be more of a step toward actually committing the crime after all the preparations have been made. It must be the sort of act that you must reasonably expect to trigger a natural chain of events that will result in the crime unless some outside factor intervenes."

This instruction does not effectively communicate to the jury what they must find to satisfy the fourth element in a second category or "interrupted" attempt case, and consequently we cannot be assured that the jury would have found that the dangerous proximity element was satisfied by the proof in this case.[12]

Therefore, I would reverse the defendant's conviction of attempted rape of a child and remand the case, whereupon the Commonwealth could decide whether it wishes to retry the defend-

---

[11]This standard is appropriate where, as here, defense counsel failed to object to the judge's final instructions even though those instructions omitted the required fourth element of dangerous proximity. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

[12]We recognize that the judge's instruction regarding attempt followed in substantial part Instruction 5.02 and its supplemental instruction in the Model Jury Instructions for Use in the District Court (1995).

ant on this indictment. I would not, as the court does in its opinion, find for the defendant on this charge based on the legal insufficiency of the evidence.