## COMMONWEALTH *vs.* WILLIAM KENNEDY.

Essex.    November 3, 1897. — November 27, 1897.

Present: HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Attempt to murder by Poisoning —Indictment — Evidence — Trial.*

An indictment, under Pub. Sts. c. 202, § 21, alleging, in substance, that the defendant feloniously, wilfully, and maliciously attempted to murder A. by placing a teaspoonful of deadly poison known as "rough on rats," known to the defendant to be a deadly poison, upon, and causing it to adhere to, the under side of the crossbar of a cup of A.'s known as a mustache cup, the cup being then empty, with the intent that A. should thereafter use the cup for drinking while the poison was there, and should swallow the poison, is sufficient, without showing further ground for expecting A. to use the cup, or alleging that the dose was large enough to kill.

At the trial of an indictment for an attempt' to kill A. by poisoning, one of the motives attributed to the defendant was love for A.'s wife. An answer, made by a child of four to an inquiry by the defendant where A.'s wife was, that she was in the kitchen, was admitted in evidence; and it was shown that the defendant turned away in a direction consistent with his having gone to the back door of the house, and three quarters of an hour later he was seen in front of the front door. *Held,* that the child's statement was admissible to show the defendant's probable belief at the time of his actions.

At the trial of an indictment for an attempt to kill A. by poisoning, one of the motives attributed to the defendant was love for A.'s wife. A witness was allowed to testify to a conversation with the defendant, in which the latter stated that one B. stuffed A. full of lies, that that was why the defendant was discharged from A.'s farm, and that A. treated his wife like a dog; and that, when asked if the trouble was not jealousy, the defendant laughed, and the witness did not know that he answered. *Held,* that the evidence was admissible.

An indictment alleged that the defendant attempted to murder A. by mingling deadly poison with tea, and by placing a quantity of the poison in an empty cup of A.'s so as to adhere to it. It appeared in evidence at the trial, that, on the evening of the day when the cup was found with the poison adhering to it, A. and others took tea together, and those who drank tea were poisoned. An expert testified that the tea contained large quantities of arsenic, and that A.'s urine, said to have been passed two or three days later, showed arsenic and evidence of irritation of the kidneys of the kind produced by arsenic. *Held,* that similar testimony as to one of the other persons who drank the tea was properly admitted.

An apothecary, who has testified at the trial of an indictment for attempting to murder by mingling a deadly poison with drink, and by placing it in an empty cup so as to adhere to it, that he sold a box of such poison the day before the cup was found with the poison adhering to it, may testify also that "to the best of his knowledge, belief, and recollection" he sold it to the defendant, and that sales of this poison were not very common, and he had three boxes on hand at

the time; and in order to prove the date of the·last sale he may refresh his memory from the poison book of the shop, in which he, alone or with others, made entries of the sale.

No exception lies to the admission of evidence, at the trial of an indictment for attempting to murder A. by placing a quantity of deadly poison upon, and causing it to adhere to, the under side of the crossbar of A.'s mustache cup, that a few days earlier a similar substance was found pasted under the bar of the cup, and also at other times in the saucer and cup, and that A. was sick after drinking from the cup on a previous day.

A material fact may be proved by legitimate inference as well as by direct testimony; and whether a given substance is poison always is matter of inference.

The time when a piece of evidence may be admitted at a trial is within the discretion of the judge.

An indictment for mingling poison with tea with intent to kill A. is supported by evidence of poisoning as alleged, that the defendant had motive and opportunity, that he made threats and had inquired whether A. still drank tea in the morning, and that he had purchased the poison two days before the act alleged.

INDICTMENT, in two counts. The first count alleged that the defendant, on November 6, 1896, at Danvers, feloniously, wilfully, and maliciously mingled a teaspoonful of powder, known as " rough on rats," the same being, and known by the defendant to be, a deadly poison, with one pint of tea, with the intent that the tea, so mingled with the poison, should be swallowed by one Albert F. Learoyd, with the intent to kill him.

The second count alleged that the defendant, at the same time and place, feloniously, wilfully, and maliciously attempted to murder Learoyd by placing a teaspoonful of powder, known as " rough on rats," the same being, and known by the defendant to be, a deadly poison, upon, and causing it to adhere to, the under side of the crossbar of a certain cup, known as a mustache cup, the property of Learoyd, the cup being then empty, with the intent that Learoyd should thereafter use the cup for drinking, and should drink certain drink therefrom, while the powder was so adhering to the cup, but unknown to Learoyd, and that he should swallow the powder.

In the Superior Court, before the jury were impanelled, the defendant moved to quash the second count in the indictment, for the reasons that it stated no offence known to the law, and did not plainly, substantially, and formally charge the defendant with any offence under the law. This motion was overruled; and the defendant excepted.

At the trial, before *Bishop*, J., the jury returned a verdict of

guilty upon each count; the defendant was sentenced on the first one only, and he alleged exceptions, which appear in the opinion.

D. N. *Crowley,* (*J. J. Cahill* with him,) for the defendant.

A. P. *White,* District Attorney, for the Commonwealth.

HOLMES, J.    The first count is for mingling poison with tea, with intent to kill one Albert F. Learoyd. Pub. Sts. c. 202, § 32.    The second count is for an attempt to commit murder by poisoning.    Pub. Sts. c. 202, § 21.    Whether the first count includes the matter of the second, with the effect that, even if the motion to quash the second count should have been granted, the verdict as rendered would stand on the first count, (*Commonwealth* v. *Nichols,* 134 Mass. 531, 536, 537,) need not be decided, as we are of opinion that the motion to quash properly was overruled.

The second count alleges in substance that the defendant feloniously, wilfully, and maliciously attempted to murder Learoyd by placing a quantity of deadly poison known as "rough on rats," known to the defendant to be a deadly poison, upon, and causing it to adhere to the under side of the crossbar of a cup of Learoyd's known as a mustache cup, the cup being then empty, with the intent that Learoyd should thereafter use the cup for drinking while the poison was there, and should swallow the poison.    The motion to quash was argued largely on the strength of some cases as to what constitutes an "administering" of poison, which have no application, but the argument also touched another question, which always is present in cases of attempts, and which requires a few words, namely, how nearly the overt acts alleged approached to the achievement of the substantive crime attempted.

Notwithstanding Pub. Sts. c. 210, § 8, we assume that an act may be done which is expected and intended to accomplish a crime, which is not near enough to the result to constitute an attempt to commit it, as in the classic instance of shooting at a post supposed to be a man.    As the aim of the law is not to punish sins, but is to prevent certain external results, the act done must come pretty near to accomplishing that result before the law will notice it.    But, on the other hand, irrespective of the statute, it is not necessary that the act should be such as inevitably to accomplish the crime by the operation of natural

forces, but for some casual and unexpected interference. It is none the less an attempt to shoot a man that the pistol which is fired at his head is not aimed straight, and therefore in the course of nature cannot hit him. Usually acts which are expected to bring about the end without further interference on the part of the criminal are near enough, unless the expectation is very absurd. In this case the acts are alleged to have been done with intent that Learoyd should swallow the poison, and, by implication, with intent to kill him. See *Commonwealth* v. *Adams*, 127 Mass. 15, 17. Intent imports contemplation, and more or less expectation, of the intended end as the result of the act alleged. If it appeared in the count, as it did in the evidence, that the habits of Learoyd and the other circumstances were such that the defendant's expectation that he would use the cup and swallow the poison was well grounded, there could be no doubt that the defendant's acts were near enough to the intended swallowing of the poison, and, if the dose was large enough to kill, that they were near enough to the accomplishment of the murder. But the grounds of the defendant's expectation are not alleged, and the strongest argument for the defence, as it seems to us, would be that, so far as this count goes, his expectation may have been unfounded and unreasonable. But in view of the nature of the crime and the ordinary course of events, we are of opinion that enough is alleged when the defendant's intent is shown. The cup belonged to Learoyd, and the defendant expected that he would use it. To allow him immunity, on the ground that this part of his expectation was ill grounded, would be as unreasonable as to let a culprit off because he was not warranted in thinking that his pistol was pointed at the man he tried to shoot. A more important point is that it is not alleged in terms that the dose was large enough to kill, unless we take judicial notice of the probable effect of a teaspoonful of " rough on rats " ; and this may be likened to the case of firing a pistol supposed to be loaded with ball, but in fact not so, or to administering an innocent substance supposing it to be poison. *State* v. *Swails*, 8 Ind. 524, and note. *State* v. *Clarissa*, 11 Ala. 57. There is a difference between the case of an attempt and a murder. In the latter case the event shows the dose to have been sufficient, without an express allegation. But we are

of opinion that this objection cannot be maintained. Every question of proximity must be determined by its own circumstances, and analogy is too imperfect to give much help. Any unlawful application of poison is an evil which threatens death, according to common apprehension, and the gravity of the crime, the uncertainty of the result, and the seriousness of the apprehension, coupled with the great harm likely to result from poison even if not enough to kill, would warrant holding the liability for an attempt to begin at a point more remote from the possibility of accomplishing what is expected than might be the case with lighter crimes. But analogy does not require this consideration. The case cited as to firing a pistol not loaded with ball has been qualified at least by a later decision, *Kunkle* v. *State*, 32 Ind. 220, 229, a case of shooting with shot too small to kill. And even in less serious crimes, especially in view of Pub. Sts. c. 210, § 8, impossibility of achievement is not necessarily a defence, for instance, in an attempt to procure an abortion upon a woman not pregnant. *Commonwealth* v. *Taylor*, 132 Mass. 261. *Commonwealth* v. *Tibbetts*, 157 Mass. 519. So in an attempt to pick a pocket which is empty. *Commonwealth* v. *McDonald*, 5 Cush. 365. See also *Commonwealth* v. *Jacobs*, 9 Allen, 274. In the case of crimes exceptionally dealt with or greatly feared, acts have been punished which were not even expected to effect the substantive evil unless followed by other criminal acts; e. g. in the case of treason, Foster, 196; *King* v. *Cowper*, 5 Mod. 206; or in that of pursuit by a negro, with intent to commit rape. *Lewis* v. *State*, 35 Ala. 380. Compare *Regina* v. *Eagleton*, Dears. C. C. 515, 538; *S. C.* 6 Cox C. C. 559, 571. A familiar statutory illustration of this class is to be found in the enactments with regard to having counterfeit bills in one's possession with intent to pass them, Pub. Sts. c. 204, § 8, (see *Regina* v. *Roberts*, Dears. C. C. 539, 550, 551,) and one which is interesting historically in the English statutes intended to keep secret the machinery used in modern manufacture. Sts. 14 Geo. III. c. 71, § 5; 21 Geo. III. c. 37, § 6. The general provision of Pub. Sts. c. 210, § 8, already referred to, long has been on the books. A case having some bearing on the present is *State* v. *Glover*, 27 S. C. 602. For these reasons, we are of opinion that the motion to quash the second count properly was overruled.

At the trial, exception was taken to the admission of evidence of an answer made by a child of four to an inquiry by the defendant where Mrs. Learoyd was. One of the motives attributed to the defendant was love for Mrs. Learoyd, and this inquiry and the answer were proved as a step toward the proof of a clandestine attempt to see her. It was shown that he turned away in a direction consistent with his having gone to the back door of the house, and three quarters of an hour later was seen in front of the front door. The child's statement was that Mrs. Learoyd was in the kitchen, and was admissible to show the probable belief of the defendant at the time of his actions. It was not offered as evidence of where Mrs. Learoyd was, and the fact that the child very likely was too young to testify is immaterial.

A witness was allowed to testify to a conversation with the defendant, in which he stated that one Kimball stuffed Learoyd full of lies, and that that was why the defendant was discharged from Learoyd's farm, and also stated that Learoyd treated his wife like a dog. The witness added that, when asked if the trouble was jealousy, the defendant laughed, and that she did not know that he answered. This was admissible as throwing light, as far as it went, on the defendant's motives and state of mind. A remark by a third person at this conversation, to the effect that Mrs. Learoyd was ill treated, and that he had seen her with a black eye, was not called for by the question, but was interjected by the witness, and no request was made that it should be ruled out.

It appeared in evidence that, on the evening of the day when the cup was found with the poison adhering to it, Learoyd and others took tea together, and those who drank tea were poisoned. An expert testified that the tea contained large quantities of arsenic, and that the urine of Learoyd, said to have been passed two or three days later, showed arsenic and evidence of irritation of the kidneys, of the kind produced by arsenic. An exception, not argued but not waived, was taken to the admission of similar testimony as to one of the other persons who drank the tea. Of course this evidence corroborated the other testimony as to the character of the tea.

An apothecary testified that he sold a box of " rough on rats "

the day before the cup was found, and, subject to exception, was allowed to testify that " to the best of his knowledge, belief, and recollection," he sold it to the defendant. The identity of a third person always is a matter of inference and opinion, but it is an opinion which any one who remembers facts on which to base the inference may give. *Commonwealth* v. *Williams,* 105 Mass. 62, 67. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 133. *Commonwealth* v. *O'Brien,* 134 Mass. 198, 200. See *Commonwealth* v. *Moinehan,* 140 Mass. 463, 464. The only objection to the form of the question was that it opened a loophole for an answer with only an uncertain memory of the sensations and impressions from which the inference was drawn. No attention seems to have been called to matter ·of form, or to this aspect in particular, and so far as we can judge the witness answered with a sufficiently definite recollection of what he saw to warrant his giving his opinion. 1 Greenl. Ev. § 440. Exception was taken also to allowing the witness to state that sales of " rough on rats " were not very common, and that they had three boxes on hand at the time. On a question like that of identity, it was permissible to allow the witness to state circumstances tending to fix the sale in his mind, and thus to make it probable that his judgment was not mistaken. The case is not like an attempt to corroborate an answer as to a relatively immediate experience of the senses. *Ashley* v. *Wolcott,* 11 Cush. 192, 196. *Delano* v. *Smith Charities,* 138 Mass. 63, 64. It presents a judgment which may vary indefinitely in the degree of its certainty, and therefore facts properly may be shown which make it more likely that the judgment is correct. See *Commonwealth* v. *Durfee,* 100 Mass. 146, where the corroborative evidence came from the witness who testified to seeing the act of adultery. In order to prove the date of the last sale the witness was allowed to refresh his memory from the poison book of the shop, in which he, alone or with others, made entries of the sale. This was proper, so far as appears. *Commonwealth* v. *Ford,* 130 Mass. 64, 66.

An exception was taken to the admission of evidence, that a few days earlier a similar substance was found pasted under the bar of the cup, and also at other times in the saucer and cup, and that Learoyd was sick after drinking from the cup on the previous Sunday. All this was admissible, as far as it went, to

show what perhaps was sufficiently clear without it, that the poison was put into the cup at the time in question, in pursuance of a deliberate scheme. *Commonwealth* v. *Corkin*, 136 Mass. 429. *The Queen* v. *Geering*, 18 L. J. (N. S.) M. C. 215. *Regina* v. *Dossett*, 2 C. & K. 306. *Regina* v. *Garner*, 4 F. & F. 346; *S. C.* 3 F. & F. 681. *Regina* v. *Harris*, 4 F. & F. 342. It is objected that it does not appear that the substance was poison. But the circumstances warranted an inference that it was. A material fact may be proved by legitimate inference, as well as by direct testimony. *Commonwealth* v. *Doherty*, 137 Mass. 245. Whether a given substance is poison always is matter of inference. See *Commonwealth* v. *Moinehan*, 140 Mass. 463, 464.

Testimony of Mrs. Learoyd, that the defendant was at the house on the evening of the day before the poisoning, was admitted in rebuttal. The only ground of exception is the time of its admission. This was in the discretion of the judge. *Commonwealth* v. *Smith*, 162 Mass. 508, 510. *Commonwealth* v. *Pierce*, 138 Mass. 165, 181. *Cushing* v. *Billings*, 2 Cush. 158, 159.

A ruling was requested that the evidence was not sufficient to support either count. As to the second count, the argument is that already disposed of on the motion to quash, except that on the evidence it is much weaker. As to the first, there was evidence of poisoning as alleged, that the defendant had motive and opportunity, that he had made threats, and had inquired whether Learoyd still drank tea in the morning, and that he had purchased the somewhat unusual instrumentality two days before the poisoning.

*Exceptions overruled.*