NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11879


COMMONWEALTH  vs.  KENNETH DYKENS.



     Middlesex.     October 5, 2015. - February 17, 2016.

  Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                          Hines, JJ.


Attempt.  Burglary.  Burglarious Implements.  Practice,
     Criminal, Plea, Postconviction relief, Duplicative
     convictions, Double jeopardy, Indictment.



     Indictments found and returned in the Superior Court
Department on March 31, 2005.

     A motion to withdraw a plea and vacate convictions, filed
on October 11, 2013, was heard by Peter M. Lauriat, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Timothy St. Lawrence for the defendant.
     Hallie White Speight, Assistant District Attorney, for the
Commonwealth.


     CORDY, J.  This case is before us following the denial by a

Superior Court judge of Kenneth Dykens's motion to vacate

several convictions resulting from his guilty pleas in

connection with a February, 2005, arrest for attempted burglary and other offenses. See Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). Specifically, he seeks to vacate two of his three convictions of attempted unarmed burglary in violation of G. L. c. 274, § 6, contending they are duplicative of his conviction on the third, and thus barred under principles of double jeopardy. He also seeks to vacate his conviction of possession of a burglarious tool or implement (a rock) in violation of G. L. c. 266, § 49, on the ground that the indictment failed to state a crime, and the Superior Court therefore lacked jurisdiction to accept a guilty plea and impose a sentence on it.

We transferred Dykens's appeal to this court on our own motion to decide whether, where a defendant has pleaded guilty to multiple counts of attempted unarmed burglary, he may subsequently challenge his guilty pleas pursuant to Mass. R. Crim. P. 30 (a), on double jeopardy grounds or whether he has waived any such claim by pleading guilty; and whether, where a defendant over the course of a single late evening and early morning unsuccessfully tried to break into a home through three different access points, he may be charged with multiple counts of attempted unarmed burglary pursuant to G. L. c. 274, § 6, or whether those acts constitute a single continuous course of conduct rendering conviction on multiple counts duplicative.

We conclude that although Dykens the defendant may bring his claim under rule 30 (a), the attempt statute, G. L. c. 274, § 6, permits multiple convictions for discrete, completed attempts of unarmed burglary; that whether separate indictments or complaints adequately charge separate attempts must be determined on the particulars of each case; and in the present case, that Dykens's multiple convictions and punishments were for separate attempts, and therefore his multiple convictions and punishments do not violate double jeopardy. We further conclude that the court lacked jurisdiction to accept Dykens's guilty plea as to the indictment charging possession of a burglarious tool or implement because the indictment failed to allege a crime. Accordingly, we affirm in part and reverse in part the denial of Dykens's motion for postconviction relief.

1. Background. In the early morning hours of February 10, 2005, John and Jacqui Cram of Malden telephoned 911 after they heard the sounds of breaking glass and saw a figure moving around on their property. Malden police Officers Southbridge and Killian responded to the call and observed the following on their arrival: (1) a ladder that the Crams had last seen lying on the ground had been placed against the house to provide access to a second-story window; (2) a screen had been torn off a first-floor window; and (3) a sliding glass door at the rear of the house had been smashed. A large rock which had not

previously been on the deck lay nearby and apparently had been used to break the glass.

The officers observed fresh footprints in the snow, which Southbridge followed through neighboring streets and yards and over a chain link fence; he discovered Dykens hiding among some rocks.  The officer ordered Dykens not to move, but Dykens attempted to escape.  The two men scuffled, and Killian eventually arrived to assist.  After a struggle, the officers were able to subdue Dykens and handcuff him.  As they stood him up to transport him to the police station, Dykens kicked Killian in the face with a shod foot.

In March, 2005, a grand jury indicted Dykens on seventeen counts stemming from his arrest, including three counts of attempted unarmed burglary[1] and one count of possession of a

---

[1] Three separate indictments were returned charging Kenneth Dykens with violating G. L. c. 274, § 6, "on or about February 10."  The first indictment charged, in relevant part, that "Kenneth Dykens . . . did attempt to break and enter the dwelling house of John Cram and Jacqui Cram in the nighttime with intent to commit a felony therein, and in such attempt did smash a glass sliding door in order to facilitate entry into the home . . . but did fail in the perpetration of said offense, or was intercepted, or prevented in the perpetration of the said attempted offense" (emphasis added).  The second indictment at issue charged, in relevant part, that "Kenneth Dykens . . . did attempt to break and enter the dwelling house of John Cram and Jacqui Cram in the nighttime with intent to commit a felony, and in such attempt did remove an outer screen in order to facilitate entry into the home . . . but did fail in the perpetration of said offense, or was intercepted, or prevented in the perpetration of the said attempted offense" (emphasis

burglarious instrument (a heavy rock), which are at issue in this appeal.[2]  Dykens pleaded not guilty to all charges at his arraignment, and subsequently filed a motion to dismiss eight of the seventeen indictments.  As to two counts of attempted unarmed burglary, Dykens argued that they were duplicative of a third count.  A judge denied the motion as to the multiple indictments for attempted unarmed burglary.

On October 17, 2005, Dykens pleaded guilty to the three counts of attempted unarmed burglary, being a habitual offender, assault with intent to maim, assault and battery with a dangerous weapon, possession of a burglarious instrument, assault and battery on a public employee, and resisting arrest. Dykens was sentenced to from seven years to seven years and one day in State prison on the indictment charging him with assault with intent to maim, five years in State prison concurrent with that sentence on the indictment charging him with attempted

_____

added).  The third indictment at issue charged, in relevant part, that "Kenneth Dykens . . . did attempt to break and enter the dwelling house of John Cram and Jacqui Cram in the nighttime with intent to commit a felony therein, and in such attempt did position a ladder in order to facilitate entry into the home . . . but did fail in the perpetration of said offense, or was intercepted, or prevented in the perpetration of the said attempted offense" (emphasis added).

[2] Dykens also was indicted for assault with the intent to maim, assault and battery with a dangerous weapon (a shod foot), malicious destruction of property with a value over $250, assault and battery on a public employee (two counts), resisting arrest, and being a habitual offender.

unarmed burglary as a habitual offender, and five years probation from and after his completed sentences on the other counts.

After Dykens was released from prison, a probation violation warrant issued. On March 22, 2013, a Superior Court judge held a final probation surrender hearing. He found Dykens in violation of the term of his probation and sentenced him to two years in a house of correction on the charge of assault and battery with a dangerous weapon, and an additional two years on the charge of possessing a burglarious implement, to be served from and after that. The judge also terminated Dykens's probation on the remaining convictions.

On October 11, 2013, Dykens moved to vacate two of his convictions of attempted armed burglary and his conviction of possessing a burglarious tool or implement pursuant to rule 30 (a). In his motion, Dykens asserted that the convictions of attempted burglary were duplicative, and should therefore be vacated and dismissed. He also argued that the rock he used to break the sliding door was not a burglarious instrument within the meaning of G. L. c. 266, § 49, and that his conviction under the statute should be vacated because the indictment was defective for failing to state a crime. On September 2, 2014, the judge denied the motion. Dykens timely appealed.

2. Discussion. a. Collateral attack on guilty plea. Both the double jeopardy clause of the Fifth Amendment to the United States Constitution and Massachusetts common law prohibit the imposition of multiple punishments for the same offense. Commonwealth v. Rollins, 470 Mass. 66, 70 (2014), citing Marshall v. Commonwealth, 463 Mass. 529, 534 (2012). It is well settled in our jurisprudence that a "guilty plea will not preclude a court from hearing a constitutional claim that the State should not have tried the defendant at all." Commonwealth v. Negron, 462 Mass. 102, 104 (2012), quoting Commonwealth v. Clark, 379 Mass. 623, 626 (1980).

A guilty plea is "an admission of the facts charged and is itself a conviction" (quotation and citation omitted), Negron, 462 Mass. at 105, and is properly challenged under rule 30 (a), which provides:

> "Any person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or her or to correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts."

Mass. R. Crim. P. 30.

In Negron, 462 Mass. at 106-107, we held that a defendant is not precluded from challenging his convictions (based on guilty pleas) on double jeopardy grounds where the defendant

claims that the charges pleaded to are duplicative on their face and further expansion of the record or evidentiary findings are not required.  Having concluded that the defendant could challenge the convictions as duplicative, the court went on to analyze whether they were in fact duplicative.[3]  Id. at 108-111.

The relevant convictions in Negron were for different crimes, armed assault in a dwelling and aggravated burglary, under different statutes, but arising out of the same criminal conduct.  Id. at 103.  The court analyzed the elements of the crimes and concluded that the former was not a lesser included offense of the latter.  Id. at 109-111.  Consequently, they were not duplicative and convictions of both did not violate double jeopardy.  Id. at 109.

Dykens's double jeopardy challenge to his multiple convictions of attempted unarmed burglary does not involve a claim that some of the charges are lesser included offenses of the others (and thus duplicative), but rather that the underlying conduct on which they are based constitutes but a single continuing offense and thus multiple convictions and

---

[3] The court in Commonwealth v. Negron, 462 Mass. 102, 108 n.6 (2012), left open the question whether the defendant, having pleaded guilty, would relinquish his entitlement to bring a double jeopardy challenge where a claim of duplicative convictions required an expansion of the record or an evidentiary hearing.  We need not answer that question in this case.

punishments for that offense are duplicative and violative of his right to be free from double jeopardy.

The record in this case includes the three indictments, each alleging a different act in furtherance of each attempt, and the transcript of the hearing at which Dykens pleaded guilty to all three. During the plea hearing, the prosecutor briefly described the evidence that would have been presented as to each of the three indictments, including Dykens's failed efforts to gain entry by different means through three separate points of access: a window on the second floor (toward which he placed a ladder against the house); a window on the first floor (from which he removed a screen); and a sliding glass door on the first floor in the rear of the home (which he shattered with a rock). Dykens admitted that he had done each of the things alleged by the prosecutor with the intent to enter the home through the three different access points, and thus, that he was guilty of three different attempts to burglarize the same home.

Where the indictments on their face charge three attempts to burglarize the same residence on or about the same date, and the record includes at least a minimal description of the key evidence establishing each of those attempts, we can decide whether the indictments are duplicative without going beyond the record, and therefore, Dykens may bring a double jeopardy challenge.

b. <u>Duplicative convictions</u>. Where a single statute is involved, we must decide "whether two [or more] discrete offenses were proved under that statute rather than a single continuing offense" (citations omitted). <u>Commonwealth</u> v. <u>Traylor</u>, 472 Mass. 260, 268 (2015).

Our inquiry starts with what "unit of prosecution" the Legislature intended as the punishable act for violations of the attempt statute, G. L. 274, § 6. See <u>Rollins</u>, 470 Mass. at 70; <u>Commonwealth</u> v. <u>Rabb</u>, 431 Mass. 123, 128 (2000).[4] We begin with the language and purpose of the statute to determine whether it explicitly addresses the appropriate unit of prosecution, and if it does not, "to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor." <u>Rollins</u>, <u>supra</u>, quoting <u>Rabb</u>, <u>supra</u>. Also "[r]elevant to discerning a criminal statute's unit of prosecution is the continuous offense doctrine, which recognizes that certain criminal statutes are intended to punish just once for a continuing course of conduct, rather than for each and every discrete act comprising that

_____

[4] Although many of our cases have defined the appropriate unit of prosecution under a particular statute, we have not defined the term itself. We decide now that a unit of prosecution is a criminal act or course of conduct punishable at law. See <u>United States</u> v. <u>Universal C.I.T. Credit Corp.</u>, 344 U.S. 218, 225-226 (1952).

course of conduct."  Commonwealth v. Horne, 466 Mass. 440, 450 (2013).

The Massachusetts attempt statute, G. L. 274, § 6, punishes "[w]hoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration . . . ."  Here, we construe the attempt statute in conjunction with the underlying substantive offense of unarmed burglary.[5]

The language of the attempt statute is not explicit as to the permissible unit of prosecution.  Dykens asks us to interpret the language in § 6 according to the rules for construction of statutes set out in G. L. c. 4, § 6, Fourth, which provides in relevant part that "[w]ords importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular . . ." (emphasis added).  When applied to the language of the attempt statute, in Dykens's view, "any act" becomes "any act or acts."  Accordingly, Dykens believes, we can infer

---

[5] General Laws c. 266, § 15, punishes "[w]hoever breaks and enters a dwelling house in the night time, with the intent [to commit a felony], or, having entered with such intent, breaks such dwelling house in the night time, the offender not being armed, nor arming himself in such house, with a dangerous weapon, nor making an assault upon a person lawfully therein . . . ."

legislative intent that all overt acts directed toward the commission of a crime be punished by a single attempt charge.

We are not persuaded by Dykens's reasoning. By its plain language, the purpose of the attempt statute is to penalize those individuals who would have achieved their criminal objective but for factual circumstances that result in failure, interception, or prevention of the crime. See Commonwealth v. Kennedy, 170 Mass. 18, 20 (1897) ("aim of the [attempt statute] is not to punish sins, but is to prevent certain external results"). Therefore, we conclude that the Legislature did not intend to reward a defendant who, on failing to accomplish his criminal endeavor in one manner, undertakes to achieve the substantive crime anew in another.

Nor do we conclude that the continuing offense doctrine advances Dykens's reading of the statute to impose a single punishment for distinct attempts. Dykens relies on a decision from the Appeals Court for the proposition that charged offenses are duplicative where the acts underlying the offense are part of a "continuous stream of conduct occurring within a short time frame and governed by a single criminal design," and thus united in "time, place, and intent." Commonwealth v. Howze, 58 Mass. App. Ct. 147, 153 (2003), overruled on other grounds by Commonwealth v. Kelly, 470 Mass. 682, 700-701 (2015). In Howze, supra at 147, 153, the Appeals Court held that, where the

13

defendant was convicted of indecent assault and battery on a child and of rape of a child, "the act of removing the victim's clothing was sufficiently bound up with and necessary to the act of penetration that due process [forbade] separating the conduct into discrete units for prosecution."  See also Commonwealth v. Suero, 465 Mass. 215, 220-221 (2013) (conviction of indecent assault and battery vacated as duplicative of rape convictions where former rested on removal of rape victim's underwear that was "incidental and necessary to the rape").

Howze and Suero are inapposite.  Although Dykens's acts occurred close together in time and at the same home, his acts were not "bound up with and necessary to" one another as the defendant's actions were in those cases.  Howze, 58 Mass. App. Ct. at 153.  Rather, his attempts to gain access via different entry points of the dwelling each could have resulted in a successful break of the dwelling.  A different conclusion could be drawn if the defendant was charged with three separate attempts based on the acts of:  (1) the placement of a ladder to reach a window, (2) the removal of the screen from that same window, and (3) the use of a rock to then break the glass on that window in an effort to gain access.  In such circumstances, the three acts would in fact be "bound up with and necessary to" the completion of a single crime, much as the removal of underwear in the perpetration of a rape.

Dykens also points to our decision in Commonwealth v. Bolden, 470 Mass. 274, 274-275 (2014), in which we held that a defendant could not be twice convicted of aggravated burglary under G. L. c. 266, § 14, for breaking and entering a single dwelling. In that case, the defendant broke into a dwelling where a husband and wife resided and assaulted the husband in the basement. Id. at 275-276. He then broke through an interior door leading to the first floor and assaulted the wife. Id. at 276. He was subsequently charged with two counts of aggravated burglary, one premised on the break into the house and the assault of the husband, and the other on the break of the interior door and assault of the wife. Id. at 276. We vacated the conviction on the second indictment, concluding that "once a dwelling is 'broken,' any subsequent breaks occurring therein -- reasonably close in time and purpose -- are but a continuation of the offense and thus insufficient to support separate convictions under § 14." Id. at 279. We stated:

> "Once a person has broken and entered any part of the dwelling, at night, . . . with intent to commit a felony therein, the predicate offense of burglary as to that dwelling is complete. Because arming oneself with a dangerous weapon and assaulting the inhabitants of that dwelling merely aggravate that singular predicate offense, the Commonwealth may not aggregate such actions into multiple units of prosecution under § 14."

Id. at 280. Dykens argues that if multiple breaks of a single dwelling do not create distinct, punishable offenses, then

multiple attempted breaks into a single dwelling must also constitute a continuous offense.

Dykens's reliance on Bolden is misplaced. The unit of prosecution for aggravated burglary is different from the unit of prosecution for attempted burglary. For the latter the proper unit of prosecution is the act necessary to prove the inchoate offense of attempt, and not the substantive crime of burglary. Thus, although in Bolden the unit of prosecution was the act of breaking and entering a singular dwelling, the unit of prosecution for attempted burglary is "any act toward [the substantive crime's] commission." G. L. c. 274, § 6.

We have consistently interpreted the attempt statute to require "a showing that the defendant, after preparing to commit the crime, has taken such overt acts toward fulfilling the crime that 'come near enough to the accomplishment of the substantive offence to be punishable.'" Commonwealth v. Bell, 455 Mass. 408, 412 (2009), quoting Commonwealth v. Peaslee, 177 Mass. 267, 271 (1901). Moreover, where distinct acts form the basis of separate indictments, the Commonwealth must still prove all elements required by the attempt statute for each charge.[6]

---

[6] Dykens does not dispute that he possessed the requisite intent, nor does he contest that he failed to achieve the substantive crime of unarmed burglary. We therefore focus on whether the facts alleged in each indictment support a finding of distinct overt acts that support independent convictions.

Here, each of Dykens's acts, as alleged in the indictments, fit squarely within the definition of an overt act.  See Commonwealth v. Foley, 24 Mass. App. Ct. 114, 115 (1987) (complaint or indictment charging attempt must specify overt act).  Positioning a ladder to facilitate entry into the dwelling, removing an outer screen to facilitate entry into the dwelling, and smashing a glass sliding door to facilitate entry each constitute an independent act sufficient to warrant a charge of attempt.  In each instance, Dykens, after having entered upon the Crams' property with the intent to break into their home, was in a position to accomplish the substantive offense absent his apparent inability to gain entry at the different access points.  In other words, with each failure to break into the dwelling, the crime of attempt was complete.

Although the proximity in time, manner, and place of Dykens's conduct is relevant to distinguishing discrete acts from a continuous act, such factors are not in and of themselves dispositive.  Rather, Dykens's attempts to gain entry at different access points of the dwelling weigh heavily against a determination that there was a "continuous stream of conduct." Howze, 58 Mass. App. Ct. at 153.  With each failure to gain entry, Dykens had the opportunity to abandon his endeavors.  Instead, he moved on to another potential point of access to the home and committed further unrelated acts in an effort to break

in, finally fleeing when he awakened the residents inside.  The Legislature surely did not intend to reward such persistence by encompassing multiple, discrete attempts within a single unit of prosecution.

Of course, our analysis is not so granular as to say that picking up a ladder is not part of the same course of conduct where the defendant then proceeds to place the ladder against a house.  Similarly, a defendant who repeatedly batters a single door with the purpose of gaining entry has likely committed only one attempt at breaking and entering.  Dykens's case highlights a long-standing comprehension in our jurisprudence of the distinction between constituent acts that, taken together, may amount to an attempt and discrete acts that, in and of themselves, establish the elements required to prove the inchoate offense.  See Peaslee, 177 Mass. at 271 (distinguishing between act sufficient to establish attempt and those preparatory actions that, taken together, may amount to attempt).[7]  See also Commonwealth v. Burns, 8 Mass. App. Ct. 194,

---

[7] A similar distinction is made in United States v. Resendiz-Ponce, 549 U.S. 102, 109 n.5 (2007), which Dykens relies on in his brief for the position that "an attempt involving multiple overt acts might conceivably qualify for several separate offenses, thus perversely enhancing, rather than avoiding, the risk of successive prosecution for the same wrong."  In Resendiz-Ponce, the defendant, a Mexican citizen, was charged with attempting to unlawfully enter the United States based on the following acts:  he walked into an

196 (1979), citing Peaslee, supra at 271-274 ("The essence of the crime of attempt is that the defendant has taken a step towards a criminal offense with specific intent to commit that particular crime. . . . It is not enough to allege that a defendant has formed the intent to commit a crime or that he has merely made preparations for the commission of a crime" [quotation and citation omitted]).

Thus, we conclude that multiple attempted breaks of a single dwelling furthered by separate acts, each coming near to the accomplishment of the crime of burglary, and not bound up with and necessary to each other, may be charged as separate offenses. The question whether factual allegations within multiple indictments adequately charge separate attempts so as to permit their prosecution is one of fact and law and dependent on the particulars in each case. The question is one that, in the first instance, may be for the motion or trial judge in the context of a motion to dismiss and, should the case proceed to trial, is a factual question that a properly instructed jury

---

inspection area; presented a misleading identification card; and lied to the inspector. Id. at 103, 109. The United States Supreme Court explained that "[i]ndividually and cumulatively, those acts tend to prove the charged attempt -- but none was essential to the finding of guilt in this case. All three acts were rather part of a single course of conduct culminating in the charged 'attempt.'" Id. at 109. Thus the charged conduct constituted a single attempt, which failed a single time. In contrast, Dykens committed acts at three separate access points.

must decide.  In any event, after a jury verdict of guilty on multiple convictions, and on the request of defense counsel for a judgment notwithstanding the verdict, "a judge also must determine whether the convictions violate the defendant's rights" under the principles of double jeopardy.  Suero, 465 Mass. at 222.[8]

c.  Jurisdictional defect.  Dykens also asserts that his conviction under G. L. c. 266, § 49, for possession of a burglarious tool or implement must be vacated because a rock is not a tool or an implement within the meaning of the statute.[9]

---

[8] Under the doctrine of merger, where the facts support multiple attempt charges but where the defendant ultimately succeeds in committing the substantive crime, the attempt resulting in completion of the crime would merge with the substantive offense.  Any other charged attempts, however, could stand as separate convictions so long as the Commonwealth proved the requisite elements of the separately charged attempts including the intent to commit the underlying crime, and an overt act coming near to its accomplishment.  The analysis here is straightforward where Dykens admitted to having the requisite intent in connection with each attempt to break and enter the Crams' home, as well as to having committed separate overt acts while on the victims' property in his efforts to gain access to the home through three different points of entry.

[9] General Laws c. 266, § 49, punishes "[w]hoever makes or mends, or begins to make or mend, or knowingly has in his possession, an engine, machine, tool or implement adapted and designed for cutting through, forcing or breaking open a building, room, vault, safe or other depository, in order to steal therefrom money or other property, or to commit any other crime, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ or allow the same to be used or employed for such purpose, or whoever knowingly has in his possession a master key designed to fit

He seeks review on the ground that the indictment was defective in failing to allege a crime, and the court lacked jurisdiction to accept his plea and impose a sentence for such conduct.  "No court has jurisdiction to sentence a defendant for that which is not a crime."  Commonwealth v. Wilson, 72 Mass. App. Ct. 416, 418, quoting Commonwealth v. Andler, 247 Mass. 580, 582 (1924).  We agree.

"We interpret statutory language to give effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an absurd or illogical result" (quotations omitted).  Commonwealth v. Scott, 464 Mass. 355, 358 (2013).  In 1853, the Legislature enacted the predecessor of G. L. c. 266, § 49, entitled, "An Act concerning Implements of Burglary."  See St. 1853, c. 194.  The statute came after the Committee on the Judiciary was tasked with "consider[ing] the [e]xpediency of providing for the punishment of persons making [b]urglar tools, or having such in their possession, with intent that they shall be used." 1853 House J. at 629.  The bill containing the apparent final version of the statute was reported from the Committee on the Judiciary and passed by both the House of Representatives and the Senate;

more than one motor vehicle, with intent to use or employ the same to steal a motor vehicle or other property therefrom . . . ."

there is no mention of any amendments to the bill. See 1853 House J. at 680, 762; 1853 Senate J. at 529, 538, 551.

From this history we can infer that the statute was enacted with the purpose of punishing individuals making or possessing burglar's tools. A question remains, however, as to what constitutes a "tool" or "implement" under § 49, as the statute does not define these terms. We therefore look to the ordinary meaning of the word as of 1853, the year the statute was enacted. See Kerins v. Lima, 425 Mass. 108, 111 n.5 (1997) (where term in statute is undefined, we may conclude that Legislature intended definition that would have been available at time original statute enacted). The 1845 edition of Webster's dictionary defined "tool" as "[a]n instrument of manual operation, particularly such as are used by farmers and mechanics; as, the tools of a joiner, cabinet-maker, smith or shoemaker." An American Dictionary of the English Language 798, vol. II (1845). "Implement" was defined as "[w]hatever may supply wants: particularly, as now used, tools, utensils, vessels, instruments; the tools or instruments of labor . . . ." An American Dictionary of the English Language 870, vol. I (1845).

From these definitions, we can conclude that the words "tool" and "implement" refer to man-made, rather than naturally occurring, items. This conclusion is supported by other

language in the statute, which further describes tools and implements as those "adapted and designed for cutting through, forcing or breaking open."  G. L. c. 266, § 49.

Our reading of § 49 to exclude naturally occurring objects is also consistent with this court's prior interpretations of the statute.  We have long recognized that the statute encompasses both ordinary tools and those designed specifically for burglary.  See Commonwealth v. Tivnon, 8 Gray 375, 381 (1857) ("A chisel or centre-bit, though a tool in common use for ordinary purposes, is quite as efficacious in the hands of a burglar to carry out his felonious intent, as a jimmy or a lock-picker, which is made for the sole purpose of being used to break and enter buildings."); Commonwealth v. Jones, 355 Mass. 170, 176-177 (1969) (ordinary tools may take on character of burglarious tools if they are intended to be used for burglarious purposes).  See also Commonwealth v. Krasner, 358 Mass. 727, 731, S.C., 360 Mass. 848 (1971) (battering ram a burglarious implement under § 49); Commonwealth v. Faust, 81 Mass. App. Ct. 498, 500-501 (2012) (screwdrivers, knife, and flashlights are burglarious instruments under § 49); Commonwealth v. Aleo, 18 Mass. App. Ct. 916, 916-917 (1984) (screwdrivers and dent pullers are burglarious implements under § 49); Commonwealth v. Dreyer, 18 Mass. App. Ct. 562, 565 (1984) (screwdriver a burglarious implement under § 49).  In no case

have we found that a naturally occurring object, such as a rock, is a tool or an implement within the meaning of the statute.

Notwithstanding this fact, the Commonwealth contends that the rock used by Dykens to smash the Crams' glass door could have been altered in some way to make it more efficacious in smashing windows.  Even if this were the case, in light of the purpose and meaning of § 49, we cannot conclude that a rock is a tool or an implement designed or adapted to effect an individual's burglarious intent.  Rather we hold that the words "tool" and "implement," as they appear in § 49, refer to man-made instruments.

In one of our earliest cases addressing § 49, we held that an indictment alleging a violation of St. 1853, c. 194 is supported by proof that some of the implements described in the indictment were in the possession of the defendant, and "adapted and designed for the unlawful purpose specified."  Tivnon, 8 Gray at 380.  Here, the indictment failed to identify an implement "adapted and designed" for breaking into a building, G. L. c. 266, § 49, because a rock is not a tool or implement within the meaning of § 49.  Where an indictment fails to allege a fact necessary to constitute an offense, it is defective, and "no court has jurisdiction to entertain it."  Commonwealth v. Cantres, 405 Mass. 238, 239-240 (1989).  Because we conclude that a rock is not a tool or implement under § 49, the

indictment in Dykens's case failed to allege a crime for which the court could accept a guilty plea, and Dykens's conviction must be vacated.

3. Conclusion. For the reasons discussed herein, the denial of Dykens's motion to vacate two of his convictions of attempted unarmed burglary is affirmed. The denial of his motion to vacate his conviction of possession of a burglarious tool or implement is reversed, and the matter is remanded to the Superior Court for the dismissal of that indictment.

So ordered.

DUFFLY, J. (dissenting, with whom Lenk and Hines, JJ., join). The court today upholds three convictions of attempted unarmed burglary of a single dwelling on a single night, based on the defendant's guilty pleas acknowledging his intent to commit unarmed burglary of the dwelling. It is conceivable that a person properly could be convicted of three attempts of unarmed burglary of the same dwelling in a single night, and the defendant here acknowledged in his plea that he intended to commit an unarmed burglary and undertook the acts separately alleged in the indictments: removing an outer screen, positioning a ladder, and smashing a glass door with a rock. As to the indictment alleging the overt act of "smash[ing] a glass sliding door in order to facilitate entry into the home", I concur in the judgment of the court that the evidence supports a conviction of attempted unarmed burglary. In addition to acknowledging that he had smashed the glass door with a rock, intending to burglarize the dwelling, the defendant agreed with the prosecutor's statement at the plea colloquy that, before fleeing, he had been standing on the deck, at the rear door, and that he "had been trying to force the rear door."

As to the other two acts which form the basis of the other two indictments, but were "not the final act in a necessary sequence," Commonwealth v. McWilliams, 473 Mass.    ,    (2016) (McWilliams), the evidence fails to show that each act was "so

close to the commission of the crime that a reasonable jury could conclude that it was virtually certain that he would have" committed the substantive offense of unarmed burglary. Id. Therefore, I respectfully dissent.

The attempt statute, G. L. c. 274, § 6, was enacted in 1832. See St. 1832, c. 62. It criminally punishes "[w]hoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration . . . ." The analytical framework which heretofore has informed our understanding of the statutory crime of attempt was developed well over a century ago and has remained unaltered to this day. As we recently reiterated, "[t]here are two categories of attempt." McWilliams, supra at . In the first category, a defendant has undertaken "the last act required to complete the crime, but for some unanticipated reason, his or her efforts are thwarted, whether by bad aim or a mistake in judgment." Id. See Commonwealth v. Bell, 455 Mass. 408, 413 (2009) (Bell), quoting Commonwealth v. Peaslee, 177 Mass. 267, 271 (1901) (Peaslee).[1] Ascertaining "criminal

---

[1] The "last act" required to be undertaken by a defendant refers to the act "which sets in motion natural forces that would bring [the substantive crime] about in the expected course of events" or to "an act which is intended to bring about the substantive crime and would bring it about but for a mistake . . . ." See Commonwealth v. Peaslee, 177 Mass. 267, 271 (1901).

liability for this sort of failed attempt is uncomplicated and noncontroversial." Bell, supra at 424 (Gants, J., dissenting). In the second category, which we have described as "more complicated," McWilliams, supra at    , a defendant has been interrupted in the "preparatory mode," before having undertaken the last act necessary to commit the offense. See id.; Bell, supra at 413.

An overt act, even when coupled with the intent to commit a crime, "commonly is not punishable if further acts are contemplated as needful." Peaslee, supra at 272. Where, as here, a defendant has been interrupted before having undertaken the last necessary act, the focus of the inquiry is whether a defendant's "overt acts . . . , although not the final act in a necessary sequence, were so close to the commission of the crime that a reasonable jury could conclude that it was virtually certain that he would have" committed the substantive offense. McWilliams, supra at    . See Bell, supra at 413-414; Peaslee, supra at 272. The distance between the overt act and the completion of the "crime must be 'relatively short' and 'narrow,'" McWilliams, supra at    , quoting Bell, supra at 415. How narrow depends on "the gravity of the crime, the uncertainty of the result, and the seriousness of harm that is likely to result." McWilliams, supra at    , citing Bell, supra at 414.

See Commonwealth v. Kennedy, 170 Mass. 18, 22 (1897).[2]  See also Commonwealth v. Gosselin, 365 Mass. 116, 121 (1974).

In this case, where each indictment alleged a nonviolent crime, not directed against a person, perpetrated by an unarmed individual, the degree of proximity between the overt act and completion of the crime must be quite narrow.  Contrast McWilliams, supra at    .  In the circumstances here, a defendant's conduct at the point when he or she was interrupted must have brought the defendant so close to perpetration of the offense as to render it "virtually certain" that, but for the interruption, the defendant would have committed the substantive crime.  See id.  To determine whether a defendant properly may be convicted of attempt requires that we examine any acts remaining in the sequence, as well as "all conduct short of the last act as 'preparation'".  See Bell, supra at 428 (Gants, J., dissenting), quoting Peaslee, supra at 272.[3]

---

[2] As stated by Chief Justice Holmes in Commonwealth v. Kennedy, 170 Mass. 18, 22 (1897), "the gravity of the crime, the uncertainty of the result, and the seriousness of the apprehension, coupled with the great harm likely to result from poison even if not enough to kill, would warrant a holding of liability for an attempt to begin at a point more remote from the possibility of accomplishing what is expected than might be the case with lighter crimes."

[3] Examining all relevant prior acts undertaken by a defendant that culminate in the overt act is also necessary to determine whether the defendant harbored the intent necessary to commit the substantive offense.  See McWilliams, 473 Mass.    ,

Here, the indictments alleged that the defendant "did smash a glass sliding door," "did remove an outer screen," and "did position a ladder in order to facilitate entry into the home." To find the defendant guilty of three separate crimes of attempt, each act must be considered independently, without the context provided by the other acts alleged.

Considering first the conviction based on the defendant's admissions that he removed an outer screen from a first-floor window and that he intended to commit a burglary, nothing in the indictment or in the plea colloquy indicates that the absence of the screen alone would have enabled the defendant to enter the dwelling without undertaking several additional steps. If the window were located anywhere above the basement level (the record does not indicate the location or size of the window), entry might have required locating the means, such as a box, to reach the window to achieve entry; the defendant then would have had to climb or stand on that object; if the window were locked, the defendant would have had to break or pick the lock, or break the window, having first obtained an implement with which to do so, before attempting entry into the dwelling. On this record,

---

(2016). Here, on the basis of each separately indicted act, it is not possible to determine whether the defendant intended to commit a burglary, but because he admitted that he harbored the necessary intent, this requirement needs no further consideration.

given the steps that remained before the defendant could have completed the substantive offense, I cannot agree that the act of merely removing an outer screen was "so close to the commission of the crime that a reasonable jury could conclude it was virtually certain that he would have" burglarized the house. McWilliams, supra at    .

The conviction based on the defendant's admission to placing a ladder against the house raises similar concerns. The defendant agreed only that he moved a ladder "in order to facilitate entry" into the dwelling.[4] Based on the facts in the record, even if the ladder had been placed directly under a second-floor window, and had been long enough to reach the window (neither fact being established in the record and, given the actions with the rock, the contrary apparently being the case), the defendant still would have had to climb the ladder in

---

[4] This language appears in the indictment. The grand jury heard testimony from a police officer that "a ladder that [the homeowner] kept at the side of the house had been moved to the deck and was partially propped up against the house." At the plea colloquy, the defendant agreed to the prosecutor's statement that a "ladder that had been [lying] flat behind the house had been moved to provide access to a second-story window by some unknown party." The prosecutor's account, to which the defendant agreed, certainly establishes that the defendant moved the ladder with the intention to use it to enter the home, but it does not establish as a factual matter how close the defendant came to breaking into the house with the use of the ladder. It is possible that the defendant found the ladder to be too heavy to use, or too short to reach the window, and so he left it "partially propped" horizontally against the house. The record contains no other facts concerning the ladder.

order to reach the window and thereafter find a way to break either the lock or the window in order to enter the house. In the context of the established facts, these are acts of preparation that involve arranging the means necessary in order to be able to commit a burglary, not sufficient overt acts to permit a reasonable fact finder to conclude that it was "virtually certain" that he would have committed the burglary with each discrete act.

The court concludes that each act came near enough "to the accomplishment of the crime of burglary" to be punishable, ante at    , without explaining how it arrives at this conclusion. In light of the scant facts in the record and the gaps discussed above, the court must be inferring from the defendant's guilty pleas the existence of the additional facts that would be required to show that he came sufficiently close to committing burglary to support three convictions of attempt. Such an inference, however, is improper; "an admission to a crime generally will not function in itself as an admission to all of the elements of that crime." Commonwealth v. Sherman, 451 Mass. 332, 337 (2008). See id. at 336-338 (discussing dismissal of guilty plea where defendant claimed his agreement to facts recited by prosecutor did not satisfy elements of crime). Accordingly, I respectfully dissent.